[Nos. 14658–1–I; 16226–8–I.   Division One.   November 3, 1986.]

WILLAPA TRADING CO., INC., *Appellant,* v.
MUSCANTO, INC., *Respondent.*

*Michael E. Ricketts* and *Jess E. Minium,* for appellant.

*David L. Ashbaugh, Arthur D. McGarry, Peter B. Camp,* and *Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* for respondent.

SCHOLFIELD, C.J.—Willapa Trading Co., Inc., appeals judgments entered by the King County Superior Court in March 1984 and February 1985. We modify and affirm.

In 1982, Willapa contracted to sell logs to a purchaser in China, the Tung Shing Trading (H.K.) Company. To pay for the logs and the charter of a vessel for their transport to China, Tung Shing opened a letter of credit in favor of Willapa with a United States bank.

Willapa purchased the logs from Muscanto, Inc., who chartered the vessel, *MV Vienna Wood,* from Sammisa Corp. Willapa, in turn, subchartered the vessel, and to pay for the logs and the charter, assigned its letter of credit to Muscanto.

As provided in the charter party agreement, the *MV Vienna Wood* began loading in Aberdeen on June 5, 1982.

Muscanto, however, directed the vessel to steam to Everett to complete the loading, maintaining that the vessel had draft problems.

Claiming a breach of the charter party, Willapa filed suit in the United States District Court in Seattle and had. the vessel arrested when it reached port. On June 14, District Court Judge William T. Beeks quashed the arrest as improper, after which the loading was completed and the ship sailed for China.

On June 22, Neil Wheeldon, the president, director, and sole shareholder of Willapa, and Muscanto's president, Bongil Ho, entered into a settlement agreement. They agreed that, upon a negotiation of the letter of credit by the bank, Willapa would receive the net amount of $31,500. Muscanto also agreed to place an additional $11,500 in a joint account until the presentation of the lay–time statement from the ship's owner, Sammisa. As the court found, the parties intended that, if the vessel had been arrested improperly, Willapa would be responsible for demurrage up to that amount.

The parties' attorneys drafted a stipulation, dismissal, and release, and executed the document subject to filing upon the satisfaction of the two conditions of the settlement. In doing so, the court found that they were acting within the scope of their authority from their respective clients.

At the time of the settlement, Willapa received $3,000 from Muscanto International (a subsidiary of Muscanto, Inc.), and 3 days later, received $27,248.38 from the bank. That left a balance due Willapa of $1,251.62 on the first condition of the settlement. When the *MV Vienna Wood* arrived in China, she was unable to berth and discharge her cargo for 3 weeks. Consequently, Muscanto incurred demurrage of nearly $100,000 to Sammisa, and thereafter claimed that it was no longer obliged to open the $11,500 joint account.

Willapa filed the instant action in King County Superior Court in March 1983, alleging state court jurisdiction by

characterizing its suit as partly within the "saving to suitors" clause of 28 U.S.C. § 1333 and partly as a nonmaritime civil proceeding. Muscanto answered the complaint, pleading (1) that Willapa was not a licensed corporation and was therefore not entitled to bring suit and (2) that the parties had entered into an accord and satisfaction. Muscanto also counterclaimed for wrongful arrest of the vessel.

On December 30, 1983, Willapa was administratively dissolved for failure to pay its corporate license fees, and Muscanto moved for summary judgment on the defense of lack of capacity. The Superior Court (Judge Faith Enyeart) granted the motion and dismissed Willapa's complaint with prejudice. A timely appeal of that ruling was filed with this court.

The remaining issues, including Muscanto's cross claims, were set for trial in September 1984. On July 20, however, Willapa's counsel filed notice of his intent to withdraw. Over Willapa's objection, leave to do so was granted by Judge Norman Quinn on August 16. Judge Quinn also denied Willapa's motion for reconsideration and refused to grant a continuance. The matter came to trial before Judge Frank Howard on September 24, with Neil Wheeldon appearing pro se and on behalf of Willapa.

The trial court found that the parties had entered into a binding settlement agreement, all the terms of which had either been met or excused. Specifically, the court found that the $31,500 condition on the settlement had been met by Willapa's receipt of $27,248.38 from the bank, $3,000 from Muscanto International and Muscanto, Inc.'s tender of the $1,251.62 balance in open court. Based upon Judge Enyeart's ruling that Willapa lacked capacity to sue, however, the court held that Muscanto need not actually pay the $1,251.62 since Willapa was foreclosed from obtaining affirmative relief.

Because the amount of demurrage exceeded $11,500 and because Judge Beeks had determined that the arrest of the vessel was improper, the court found that Muscanto's failure to place the $11,500 in a joint account was excused.

The Superior Court entered a judgment on February 11, 1985, dismissing with prejudice "[a]ll claims still pending in this litigation". Willapa has appealed separately from the judgment of dismissal of March 1984 and the judgment of February 11, 1985. The two appeals were consolidated for argument and will be disposed of in this opinion.

## CLAIM OF EXCLUSIVE ADMIRALTY IN REM JURISDICTION

Willapa assigns error to the state court's proceeding to decide issues on their merits, contending that the United States District Court had exclusive admiralty in rem jurisdiction.

■ The United States District Court entered an order on June 14, 1982, quashing the arrest of the *MV Vienna Wood*. The vessel was never thereafter brought under the control of that court. It is settled law that in rem jurisdiction requires a res. Release or removal of the res from the control of the court deprives the court of in rem jurisdiction. There is no longer a res (in this case, the vessel) upon which the court can act. *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381 (9th Cir. 1983), *cert. dismissed*, 467 U.S. 1247, 82 L. Ed. 2d 852, 104 S. Ct. 3526 (1984).

■ Willapa filed an amended complaint in federal court on June 21, 1982, asserting in personam and in rem claims. When in rem jurisdiction was lost by release of the vessel, the court retained jurisdiction over the in personam claims. Willapa filed this case in King County Superior Court in March 1983. State courts have in personam jurisdiction in admiralty cases by virtue of the "saving to suitors" clause in 28 U.S.C. § 1333(1).[1] *Scudero v. Todd Shipyards Corp.*, 63 Wn.2d 46, 385 P.2d 551 (1963). Where federal jurisdiction is in personam only, the federal and state courts enjoy

---

[1] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

concurrent jurisdiction. *Pasternack v. Lubetich,* 11 Wn. App. 265, 522 P.2d 867 (1974). In cases of concurrent jurisdiction in personam, litigation can proceed in either or both courts until judgment is obtained in one of them. *Puget Sound State Bank v. Gallucci,* 82 Wash. 445, 459, 144 P. 698 (1914); 20 Am. Jur. 2d *Courts* § 135 (1965).

It follows that the state court had jurisdiction to proceed and enter the judgments appealed by Willapa.

### TRIAL COURT JURISDICTION WHILE A FINAL ORDER IS ON APPEAL

Willapa contends that acceptance of review of the order of dismissal entered by Judge Enyeart in March 1984 left the trial court without jurisdiction to hear the remaining issues in the case. This contention is without merit. Under CR 54(b), where more than one claim for relief is presented in an action, whether as a claim, counterclaim, etc., or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties. In cases with multiple parties or multiple claims, RAP 2.2(d) allows for an appeal to be taken from a final judgment which does not dispose of all of the claims as to all of the parties.

That which was implicit in the rules above is now expressly stated in RAP 7.2(l), which provides that

> the trial court retains full authority to act in the portion of the case that is not being reviewed by the appellate court.

The Superior Court did not err in proceeding to trial on the remaining issues.

### WILLAPA'S CLAIM OF DENIAL OF DUE PROCESS IN ALLOWING WILLAPA'S COUNSEL TO WITHDRAW AND DENIAL OF CONTINUANCE

Willapa argues that the trial court abused its discretion by allowing its counsel to withdraw and denying a continuance.

After one continuance granted at the request of Muscanto, September 18, 1984, was set as the trial date. In the

order granting the continuance, the trial court specified that no further continuances would be granted. Trial actually commenced on September 24, 1984. In Wheeldon's affidavit, dated August 14, 1984, he acknowledged receiving a letter from his attorney dated July 18, 1984, in which the attorney advised Wheeldon that he felt compelled to withdraw as his attorney. A motion to withdraw was filed 2 days later in superior court.

Presiding Judge Norman Quinn permitted the withdrawal and denied Wheeldon's motion for a continuance. These rulings were affirmed following argument on a motion for reconsideration on September 6. Wheeldon subsequently appeared pro se and as Willapa's representative at the trial.

■ Willapa and Wheeldon argue that allowing counsel to withdraw and denying a continuance when there was insufficient time for a substitute counsel to prepare for trial amounts to a denial of due process. However, the Sixth Amendment right to effective assistance of counsel only applies to criminal proceedings, and no similar right is given to parties in civil actions. *Seventh Elect Church v. Rogers,* 34 Wn. App. 105, 120, 660 P.2d 280 (1983).

■ Moreover, a party does not have an absolute right to a continuance, and the granting or denial of a motion for a continuance is reversible error only if the ruling was a manifest abuse of discretion. *Martonik v. Durkan,* 23 Wn. App. 47, 596 P.2d 1054 (1979). A manifest abuse of discretion occurs where the ruling is manifestly unreasonable or is based on untenable grounds or done for untenable reasons. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971).

In *Balandzich v. Demeroto,* 10 Wn. App. 718, 519 P.2d 994 (1974), the court discussed some of the considerations for a trial judge's exercise of discretion in this area.

> In exercising its discretion, the court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the

litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.

*Balandzich,* at 720.

Here, the presiding judge carefully considered all relevant aspects of the matter, including the considerations listed in *Balandzich.* He noted that the matter had been continued once before with the specification that no further continuances would be granted; and he discussed the prejudicial impact of a continuance on a party who is prepared and ready for trial and the advantages of avoiding delay in litigation whenever possible.

The judge also was cognizant that the relationship between Wheeldon and the withdrawing attorney had deteriorated to the point that the withdrawal had to be permitted, and noted that Wheeldon had knowledge of his attorney's decision to withdraw approximately 2 months prior to the trial date. The presiding judge also commented on the heavy trial load of the King County Superior Court and why parties should not be permitted to control the trial calendar through delayed employment of substitute counsel.

The record in this case is replete with pleadings and affidavits prepared and signed by Wheeldon and reflects that Wheeldon was experienced in litigation. Taking all of these circumstances into consideration, as did the able and experienced presiding judge, we conclude there was no abuse of discretion in allowing counsel to withdraw and denying the motion for a continuance.

### Claimed Error in Allowing a Lay Person To Represent a Corporation

Willapa asserts it was an abuse of discretion to permit Wheeldon to act as its attorney in the trial of this case before Judge Howard. Willapa relies upon the rule that the pro se exception normally applies only to a lay person acting solely on his own behalf. *Washington State Bar Ass'n v.*

*Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 586 P.2d 870 (1978).

While it may be somewhat unusual, we find no abuse of discretion in permitting Wheeldon to appear on his own behalf and for Willapa Trading Co., Inc., a corporation. Wheeldon was the president, director, and sole stockholder of Willapa. In acting for Willapa, he was, in fact, acting on his own behalf. No financial interests other than Wheeldon's were involved. Furthermore, the record reflects that Wheeldon sought permission from the court to appear for himself and his wholly owned corporation. If granting that permission was error, it was invited error, which he cannot now use to gain relief on appeal. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

### DENIAL OF JURY TRIAL

Willapa asserts that when the trial court proceeded without a jury to find the facts supporting its conclusion that the parties had reached an enforceable settlement agreement, it effectively denied Willapa the right to a jury trial.

In a civil action, the right to a jury trial exists where the issues are purely legal in nature, but there is no right to a jury where the action is purely equitable. *Allard v. Pacific Nat'l Bank,* 99 Wn.2d 394, 399, 663 P.2d 104 (1983). In cases involving both legal and equitable issues, the court has broad discretion whether to try all, some, or none of the issues to a jury. *S.P.C.S., Inc. v. Lockheed Shipbuilding & Constr. Co.,* 29 Wn. App. 930, 631 P.2d 999 (1981).

Willapa contends there were various factual issues that had to be resolved in order to determine whether there was an agreed settlement and what the terms of the settlement were. While this contention has some validity, that does not mean the court erred in treating the action as primarily one in equity. The overriding issue was whether an alleged settlement agreement was going to be specifically enforced. An action for specific performance of a contract is an equitable proceeding. *Sheldon v. Hallis,* 72 Wn.2d 993, 996, 435 P.2d 988 (1967); *Kreger v. Hall,* 70 Wn.2d 1002, 1008, 425 P.2d

638 (1967). There was no denial of the right to a jury trial.

## TERMS OF SETTLEMENT CONTROL

While the court's findings of fact are supported by substantial evidence, we disagree with conclusion of law 3, which reads:

> Because Willapa Trading is foreclosed by the order of the Honorable Faith Enyeart dated March 1, 1984, from obtaining affirmative relief, Muscanto need not actually pay Willapa the sum of $1,251.62.

The settlement the court found and enforced was agreed to on June 22, 1982. The settlement resolved all issues between the parties, and called for Willapa to receive the net amount of $31,500. Enforcement of the settlement requires that its terms control on all issues, unaffected by subsequent court orders. Therefore, Willapa is entitled to receive the sum of $1,251.62, which Muscanto tendered at trial and again during argument on this appeal.

Having concluded that Judge Howard's order enforcing the settlement agreement will be affirmed, the issues involving the denial of Willapa's motion to strike affirmative defenses and the granting of Muscanto's motion for summary judgment have become moot. Judge Howard's order entered on February 11, 1985, enforcing the settlement effectively resolved all issues. It is therefore unnecessary that we address further the issues decided in the March 1984 judgment.

Upon payment to Willapa of $1,251.62 within 30 days of the filing of this opinion and notification thereof to this court, the judgments of March 1984 and February 1985 will be affirmed.

SWANSON and COLEMAN, JJ., concur.