IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Estate of | ) | No. 30331-4-III |
| | ) | |
| | ) | |
| WENDELL K. MILES, | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |
| Deceased. | ) | |

KULIK, J. — Wendell Miles died, leaving his real property to the "Colville

human[e] Society."[1] At the time of Mr. Miles's death, no such organization existed. The

trial court held an evidentiary hearing to determine the recipient of the property. Both

Colville Valley Animal Sanctuary (CVAS) and Joyce Tasker on behalf of Dog Patch

Group, Inc. claimed an interest in the bequest. The court found that Mr. Miles intended to

leave the property to a singular organization and concluded CVAS was the intended

recipient of the ambiguous bequest. Ms. Tasker appeals. She contends that the court

erred by failing to apply the doctrine of cy pres and, consequently, failing to distribute the

property among the organizations fulfilling Mr. Miles's charitable intent of helping

---

[1] While the actual language of the bequest states "Colville human Society," the
parties agree that Mr. Miles intended to write "Colville humane Society."

animals in Colville. She also contends that the evidence does not support the trial court's conclusion that Mr. Miles intended to designate CVAS as the recipient. CVAS cross appeals, challenging the court's decision to strike portions of its declarations and to impose sanctions against its director. CVAS also contends that Ms. Tasker lacks standing to appeal the trial court's decision.

The standing of Ms. Tasker to bring this appeal is dispositive and results in dismissal of her appeal. She is not an aggrieved party. Therefore, we affirm the trial court's award to CVAS. We also affirm the trial court's sanctions imposed on Nancy Rose. Because of our disposition on standing, we need not address Ms. Tasker's additional issues in her appeal.

## FACTS[2]

Wendell Miles loved wildlife and cared very passionately about the welfare of animals. In March 2010, one month prior to his death, Mr. Miles executed a valid will on a preprinted form. He included several specific bequests in his own handwriting. The bequests were made to seven individuals and four charities. Two of the charities chosen by Mr. Miles to receive a monetary bequest were "PETA" or People for the Ethical

---

[2] We limit our recitation of facts to those necessary to address the issues of standing and sanctions.

Treatment of Animals, and "SPEA" that was determined to be the American Society for the Prevention of Cruelty to Animals (ASPCA). Mr. Miles chose a third charity, the "Colville human[e] Society," to receive his real property. The last charity, the "Red Cross," was to receive the residual of Mr. Miles's estate.

Mr. Miles died on April 22. At the time of his death, there was no organization named the Colville Humane Society. The personal representative of the estate filed an amended petition for distribution of real property. She petitioned the court to convey the real property to the estate's residuary beneficiary, the American Red Cross.

Instead, the court ordered an evidentiary hearing to determine the correct method of distribution of the real property. The court stated that it would hear oral testimony at the hearing. Notice was published prior to the hearing.

Four organizations responded to the notice. The two organizations of importance to this appeal are the Dog Patch Group, Inc. and CVAS.

Joyce Tasker, as an interested party to the property distribution, filed on behalf of Dog Patch. Through her attorney, Ms. Tasker asserted that her corporation, Dog Patch, should share in the bequest with other humane societies in Colville. Dog Patch began operating as a humane society in the Colville area in 1991. Since its formation, Ms.

3

Tasker has been the sole director with exclusive rights to make decisions on behalf of the corporation. Dog Patch advertised as a humane society in the 1990s.

However, between 2008 and 2010, Dog Patch had no records on new intakes to the facility and no records on adoptions that it facilitated. Nor did Dog Patch have any records of visitors to its facility. The number of dogs at Dog Patch varied between 16 to 25 daily. The number of cats varied from 3 to 5. Dog Patch rarely had openings. Instead, Dog Patch facilitated adoptions through private parties only.

Ms. Tasker performed all duties at Dog Patch. There were no paid employees; Ms. Tasker was its only volunteer. It did not participate in any community events or undertake any presentations, publications, programs, or campaigns. As of March 2010, Dog Patch was marketing a holistic methodology for treating humans and animals.

The other organization, CVAS, began operating as a humane society in the Colville area in 2003. In 2010, CVAS sheltered 202 cats and 103 dogs and adopted out 114 cats and 102 dogs. CVAS also trapped and spayed/neutered 21 cats.

CVAS actively promoted itself as a humane society in Colville and was a highly visible organization. Beginning in 2005, CVAS was involved in numerous public events and fundraising efforts in which it held itself out as Colville's humane society. CVAS's brochure described the organization as a humane society, and its publication listed the

4

organization's name as the "Colville Pet Refuge Humane Society." Clerk's Papers (CP) at 247, 390-401. This title was also used in CVAS's business correspondence in late 2009.

The trial court held a hearing on distribution of the property. Lisa Gallagher, a CVAS volunteer who had helped in gathering and preparing documents, wanted CVAS's attorney to present new declarations to rebut Ms. Tasker's contentions. However, the trial court did not allow the parties to present evidence at the hearing, despite its earlier ruling.

The trial court issued findings of fact and conclusions of law. The court found that Mr. Miles had a clear intent in his will to leave property to charitable organizations that protected and cared for animals. Then, the court compared all bequests made by Mr. Miles and found that all designations were to specific individuals, with no designations to a class. The court concluded that the cy pres doctrine did not apply because Mr. Miles intended to leave the property to a specific, singular organization when he designated the "Colville human[e] Society." CP at 248.

However, the trial court concluded that there was ambiguity as to which organization Mr. Miles intended to designate. The court admitted extrinsic evidence to resolve the latent ambiguity in the designation of the "Colville human[e] Society." The court noted that it could use surrounding circumstances and the language of the will to

5

give effect to the testator's intent. The court also noted that a testator is presumed to know the circumstances that could affect the construction of his will.

The court found that at the time of Mr. Miles's death, Dog Patch was no longer accepting animals from the public and had not broadly accepted animals since at least April 2008. Also, the court found that Dog Patch was marketing a holistic methodology for treating humans and animals in March 2010.

For CVAS, the trial court considered the number of dogs and cats sheltered and adopted in 2010 and the number of cats spayed/neutered in 2010. The court found that CVAS used the designations "The Refuge Humane Society" and "Colville Pet Refuge Humane Society, Inc." as alternative business names. CP at 247.

The court concluded that Mr. Miles intended to leave his property to the "Colville human[e] Society," and that this designation is a close approximation of "The Refuge Humane Society" and the "Colville Pet Refuge Humane Society." The court ordered the estate to convey the real property to CVAS, consistent with the intent of Mr. Miles.

Afterward, CVAS disagreed with its attorney's handling of the evidentiary hearing, particularly the attorney's alleged failure to challenge the court's decision not to allow evidence. Ms. Gallagher expressed to CVAS's attorney that the declarations were

6

needed in the record to make the case stronger against an appeal. In response, CVAS's attorney withdrew from the case.

Ms. Tasker informed CVAS of her intent to appeal. In an effort to submit the new evidence before the CR 59 deadline expired, CVAS's director, Ms. Rose, filed a motion to reopen the record and amend the filings to include the declarations that CVAS intended to submit at the hearing. Ms. Tasker opposed the motion on the basis that it was filed by a nonattorney on behalf of a corporation, CVAS. Ms. Tasker also sought CR 11 sanctions against Ms. Rose. The court denied the motion to reopen the record and sanctioned Ms. Rose in the amount of $1,100.

Ms. Tasker and CVAS appeal. Ms. Tasker, as an interested party, appeals the trial court's decision to convey the property to CVAS. CVAS cross appeals the trial court's decision to strike portions of its declarations and for sanctioning Ms. Rose. CVAS also challenges Ms. Tasker's standing to appeal.

## ANALYSIS

*Standing.* Standing is a question of law that we review de novo. *Wolstein v. Yorkshire Ins. Co.*, 97 Wn. App. 201, 206, 985 P.2d 400 (1999). Without standing, a court lacks the necessary jurisdictional power to entertain a party's claim. *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986). "[S]tanding is a jurisdictional issue

7

that can be raised for the first time on appeal." *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212 n.3, 45 P.3d 186 (2002).

CVAS challenges Ms. Tasker's standing to appeal.[3] CVAS contends that Ms. Tasker cannot appeal the trial court's decision because she is not a real party in interest. CVAS also contends Ms. Tasker cannot appeal on behalf of Dog Patch, the real party in interest, because she does not have the legal right to advance a claim for a corporation.

To have standing, a claimant must establish that injury has occurred to a legally protected right. *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 176 n.2, 982 P.2d 1202 (1999). Additionally, the claimant must be the real party in interest, meaning that the claimant is the person who possesses the right to be enforced. *Id.* The claimant must have a personal stake in the outcome of the case. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 584, 5 P.3d 730 (2000).

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. A party is not entitled to appeal if he or she has no interest in the subject matter and is not injured, or aggrieved, by the judgment. *Sheets v. Benevolent & Protective Order of*

---

[3] CVAS initially raised the standing/real party in interest issue in a motion to dismiss Ms. Tasker's appeal. A commissioner of this court denied the motion, reasoning that the appeal was not frivolous because it presented a debatable issue with respect to standing. The commissioner's decision did not resolve the issue of standing. CVAS is entitled to reassert the standing issue before this court.

*Keglers*, 34 Wn.2d 851, 855, 210 P.2d 690 (1949) (quoting *State ex rel. Simeon v. Superior Court*, 20 Wn.2d 88, 90, 145 P.2d 1017 (1944)). "An aggrieved party is one whose proprietary, pecuniary, or personal rights are substantially affected." *Cooper v. City of Tacoma*, 47 Wn. App. 315, 316, 734 P.2d 541 (1987).

Here, the aggrieved party is Dog Patch. The trial court specifically identified Dog Patch as an organization responding to the notice for distribution. The trial court issued findings that negatively impacted Dog Patch. Dog Patch was not awarded a portion of the bequest as requested. Despite being the aggrieved party, Dog Patch is not mentioned in Ms. Tasker's notice of appeal.

Ms. Tasker is not an aggrieved party. She does not have a proprietary, pecuniary, or personal right that was affected by the trial court's decision because she would not benefit from the bequest. Instead, the bequest would financially benefit her corporation, Dog Patch, and its ability to perform humane society activities. Ms. Tasker does not receive income from Dog Patch or own any of its property. While the additional funds would potentially allow Dog Patch to provide more aid to animals, this would not directly affect Ms. Tasker's individual volunteer work that she already performs for the corporation. Because Ms. Tasker is not an aggrieved party, she has no standing to appeal the decision of the trial court.

Ms. Tasker contends that she is an aggrieved party as an individual, separate from Dog Patch's claim. However, despite her assertion to the contrary, Ms. Tasker never asserted an individual claim in the bequest before the trial court. She continually maintained that her appearance was on behalf of Dog Patch and that organizations like Dog Patch were the intended recipient. In her personal affidavit, she states, "As the Petition pertains to me, and Dog Patch Humane of Colville, . . . I believe this gift was intended for my organization Dog Patch . . . . I do not know of any other organization except mine and Colville Animal Sanctuary that could even be serious contenders for the sale proceeds, but I have never argued with the Personal Representative of the Estate that the proceeds should be all mine." CP at 25. She goes on to suggest that the bequest was intended for an organization, stating that it was her position early on that "the proceeds be distributed to the organizations existing in the area that could reasonably be considered within the category of 'Colville Human Society.'" CP at 25-26. Again in a later affidavit, Ms. Tasker states, "Mr. Miles' gift to Colville Humane Society is clearly his intent to make a gift to Colville animal rights groups, Dog Patch included." CP at 38. At no point does Ms. Tasker contend that she should benefit from the bequest as an individual. Nor do the court's findings and conclusions treat Ms. Tasker as a potential recipient. She is not an aggrieved party.

10

Ms. Tasker also contends that she can represent Dog Patch's interest in this appeal because she can act on behalf of her private operating foundation as its sole incorporator. Thus, acting for Dog Patch was, in fact, acting on her own behalf. This contention fails.

Generally, a party is prohibited from asserting the legal right belonging to another. *West v. Thurston County*, 144 Wn. App. 573, 578, 183 P.3d 346 (2008). When a corporation's right is involved, typically a shareholder cannot sue for wrongs done to a corporation.[4] *Sabey*, 101 Wn. App. at 584. "The reason for this is that the cause of action accrues to the corporation itself, and the stockholders' rights therein are merely of a derivative character and therefore can be enforced or asserted only through the corporation." *Goodwin v. Castleton*, 19 Wn.2d 748, 761, 144 P.2d 725 (1944). Stated differently, the corporation is a separate entity with its own legal rights and the stockholder's interest is viewed as too removed to meet the standing requirements. *Sabey*, 101 Wn. App. at 584. "Even a shareholder who owns all or most of the stock, but who suffers damages only indirectly as a shareholder, cannot sue as an individual." *Id.*

---

[4] As exceptions to the general rule, a stockholder may bring a separate right of action when there is an independent duty owed to the stockholder from a wrongdoer or when the stockholder's injury is separate and distinct from other stockholders. *Sabey*, 101 Wn. App. at 584-85. Neither exception applies here.

11

"An individual who chooses to incorporate and thereby enjoy the benefits of the corporate form must also bear the attendant burdens." *Cottringer v. Emp't Sec. Dep't*, 162 Wn. App. 782, 785, 257 P.3d 667, *review denied*, 173 Wn.2d 1005 (2011). The individual "'cannot employ the corporate form to his advantage in the business world and then choose to ignore its separate entity when he gets to the courthouse.'" *Zimmerman v. Kyte*, 53 Wn. App. 11, 18, 765 P.2d 905 (1988) (quoting 12B W. FLETCHER, PRIVATE CORPORATIONS § 5910 (1984)).

Ms. Tasker cannot represent Dog Patch's interest in this appeal. Dog Patch is required to assert its own right to the bequest as a result of its corporate status. Ms. Tasker's sole control of Dog Patch does not give her the authority to appear for her corporation on appeal. Nor does it matter that Dog Patch is a nonprofit corporation rather than a corporation with stockholders. By incorporating Dog Patch, Ms. Tasker chose to enjoy the benefits of the corporate form. She must also bear its attendant burdens. As its own entity, Dog Patch is the proper party to appeal the trial court's decision.

Ms. Tasker cites *Willapa Trading Co. v. Muscanto, Inc.*, 45 Wn. App. 779, 786-87, 727 P.2d 687 (1986) as authority that she is allowed to act on behalf of Dog Patch's interests as the corporation's sole director, officer, and shareholder. Ms. Tasker's reliance on *Willapa* fails. *Willapa* does not create an exception to the rule that allows for

12

self-representation for a single member corporation. *Dutch Vill. Mall, LLC v. Pelletti*, 162 Wn. App. 531, 537-39, 256 P.3d 1251 (2011), *review denied*, 173 Wn.2d 1016, *cert. denied*, 133 S. Ct. 339 (2012). The same appeals court that decided *Willapa* also determined that the case could not be read to give trial courts the discretion to allow corporations to be represented by a nonlawyer, even if the nonlawyer is the corporation's sole director, officer, and shareholder. *Id.* at 537. Ms. Tasker cannot appeal on behalf of Dog Patch's interests.

In sum, Ms. Tasker is not the aggrieved party and therefore lacks standing to bring this appeal. The standing issue is dispositive and results in dismissal of Ms. Tasker's appeal. Thus, we will not address the substantive issues that Ms. Tasker raises. We do address the issue of sanctions raised in CVAS's cross appeal.

*Sanctions.* A trial court's decision to impose CR 11 sanctions is reviewed for an abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). A trial court abuses its discretion if it bases its decision on untenable grounds or for untenable reasons, or if the decision is manifestly unreasonable. *Amy v. Kmart of Wash. LLC*, 153 Wn. App. 846, 866, 223 P.3d 1247 (2009) (quoting *In re Estates of Palmer*, 145 Wn. App. 249, 259-60, 187 P.3d 758 (2008)). "In deciding whether the trial court abused its discretion, we must keep in mind that '[t]he purpose behind CR 11 is to deter *baseless*

13

filings and to curb abuses of the judicial system.'" *Biggs*, 124 Wn.2d at 197 (quoting

*Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 219, 829 P.2d 1099 (1992)).

CR 11 requires that every pleading, motion, and legal memorandum of a party

represented by an attorney be dated and signed by at least one attorney of record. When a

pleading is not signed accordingly, it must be stricken "unless it is signed promptly after

the omission is called to the attention of the pleader." CR 11(a). Further, if a pleading is

signed in violation of this rule, the court has the discretion to impose appropriate

sanctions on the party who signed it. CR 11(a).

Sanctions are proper under CR 11 if (1) the action is not well grounded in fact,

(2) the action is not warranted under existing law, or (3) the attorney signing the

pleadings failed to make a reasonable inquiry into the factual or legal basis for the claim.

*Madden v. Foley*, 83 Wn. App. 385, 389, 922 P.2d 1364 (1996) (quoting *Lockhart v.

Greive*, 66 Wn. App. 735, 743-44, 834 P.2d 64 (1992)). Lack of standing is an

appropriate basis to award CR 11 sanctions. *State ex rel. Quick-Ruben v. Verharen*, 136

Wn.2d 888, 904-05, 969 P.2d 64 (1998).

A corporation can only act through its agents and therefore must be represented by

an attorney in legal proceedings. *Finn Hill Masonry, Inc. v. Dep't of Labor & Indus.*, 128

Wn. App. 543, 545, 116 P.3d 1033 (2005).

14

Here, the court struck the pleadings and sanctioned Ms. Rose for the unauthorized practice of law for filing and signing the motion for CVAS. As the court noted, Ms. Rose violated the longstanding rule in Washington that a nonattorney may not represent a corporation. *Id.* CVAS's ability to correct Ms. Rose's filing mistake does not remove the damage to Ms. Tasker. Ms. Tasker still needed to respond to the motion.

The trial court mitigated the amount of the sanction. It considered the validity of the parties' arguments and Ms. Rose's limited finances. The court decreased the amount of the sanction from $1,580 to $1,100. The trial court did not abuse its discretion in ordering a monetary sanction against Ms. Rose.

*Attorney Fees.* CVAS requests attorney fees pursuant to RAP 18.1 and RCW 11.96A.150. We find no justifiable reason to award attorney fees on appeal. Ms. Tasker's appeal was not frivolous. A financial burden on CVAS is not an appropriate justification for awarding attorney fees. We decline CVAS's request.

We also decline consideration of CVAS's statement of additional authorities and Ms. Tasker's request for attorney fees based on this filing. Nothing submitted by the parties impacted our decision.

15

No. 30331-4-III
*In re Estate of Miles*

We dismiss Ms. Tasker's appeal for lack of standing. We affirm the trial court's sanction of Ms. Rose. We award no attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:

_____     _____
Korsmo, C.J.                               Fearing, J.

16