# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Marriage of )
) No. 77952-4-I
ANGELA FREEMAN, )
)
   Respondent, )
) DIVISION ONE
   and )
) UNPUBLISHED OPINION
OSCAR FREEMAN, )
)
   Appellant. )
_____) FILED: June 17, 2019

   MANN, A.C.J. — Oscar Freeman challenges the trial court's characterization and distribution of property following the dissolution of his marriage to Angela Freeman. He contends the trial court erred in characterizing the family home as her separate property. He further contends the trial court erred in denying his motion for a continuance after his attorney withdrew and granting Angela's request for attorney fees. We affirm.

I.

   Angela[1] and Oscar are the parents of two children, ages 15 and 10 at the date of dissolution. Angela and Oscar began their relationship around 2000. They moved in together in 2002, around the time their first child was born.

_____

   [1] We refer to the parties by their first names to avoid confusion. No disrespect is intended.

In 2005, the parties moved into a home in Seattle. The home loan and the title to the home were both in Angela's name only. At the time of purchase, Oscar was unemployed and had poor credit. Oscar was incarcerated between 2006 and 2008. Following his release, Oscar moved back in with Angela and the children. Oscar remained unemployed until 2009, when he started a tow truck business. The home was paid off in 2012.

Angela and Oscar married on July 27, 2013, and separated on September 15, 2016. Angela petitioned for dissolution on December 21, 2016. Oscar did not respond to Angela's petition. On March 14, 2017, Angela sought an order of default and entry of final orders. Again, Oscar did not respond. On April 11, 2017, the court entered an order of default along with a divorce decree, findings of fact and conclusions of law, final parenting plan, and order of support.

After learning of the default judgment, Oscar retained counsel. On May 15, 2017, Oscar filed a motion to set aside the default judgment. Following a hearing on June 2, 2017, the court granted Oscar's motion and vacated the judgment. Oscar filed a response to Angela's petition that same day, contesting her proposed property and debt divisions, child support, and parenting plan.

On November 2, 2017, five days prior to the scheduled mediation, counsel for Oscar filed a notice of withdrawal effective immediately. The notice stated that Oscar "instructed counsel not to attend [mediation] as he intends to appear representing himself." The parties attended mediation on November 7, 2017. Oscar does not dispute Angela's assertion that he failed to provide any materials for mediation. Mediation failed and the parties proceeded to trial.

On November 14, 2017, Oscar filed a pro se objection to his attorney's motion to withdraw, asserting that the withdrawal violated CR 71 and caused severe prejudice. At a pretrial conference the following day, the court agreed that Oscar's attorney withdrew without providing the required 10-day notice pursuant to CR 71 but noted that Oscar's objection was untimely. After hearing the parties' arguments, the court granted Oscar a continuance until December 11, 2017. The court also ordered Oscar to promptly provide Angela with requested discovery, including wage stubs, tax returns, and bank statements.

At the December 11 pretrial hearing, Oscar's new attorney moved for a two-week continuance, arguing that she had been retained on short notice and had little time to prepare. Angela objected, arguing that granting an additional continuance would unfairly increase her costs and cause prejudice. The trial court asked Oscar whether he would be able to pay Angela's attorney fees to date, and he advised that he could not. The trial court denied Oscar's motion.

The case proceeded to a bench trial. The primary concerns to be resolved at trial were the disposition of the home, which had an estimated value of $316,000, and of liquid assets in Oscar's name totaling approximately $94,000. Oscar asserted that one half the value of the home should be awarded to him as community property because both parties resided in the home and contributed to the household. Angela argued that the home should be awarded to her as her separate property because her credit secured the home loan, she paid the property taxes, and the home was paid off in full before the parties married in 2013. Angela further argued that if Oscar asserts that the parties were in a committed intimate relationship, then she should be awarded a

community property share of Oscar's liquid assets. Angela also requested an award of attorney fees pursuant to RCW 26.09.140.

Following trial, in its findings of fact and conclusions of law, the court awarded the home to Angela as her separate property:

> The home was acquired prior to the marriage and all documents related to the home and that were presented at trial are in the Petitioner's name only. The loan number on the check that was presented by the Respondent is not the same loan number as the loan number on the documents related to the home loan. This court finds that the home was a gift to the Petitioner. At the time that the home was acquired the Respondent was unemployed. The mailing address for the Respondent has not been the home [ ] but based on testimony, the Respondent's mailing address was the home of the Petitioner's parents. The Respondent testified that he did not add his name to the title of the home even when the home was being refinanced. This court finds that the home was a gift to the Petitioner and it was intended that the children reside in the home. This court finds that the Petitioner was paying the bills associated with the home and there is nothing in the record to support a finding that the home is community property.

In reaching this conclusion, the court found "Mr. Freeman provided insufficient credible evidence to support his requests that the real property was community property or that he was entitled to a right to reimbursement for his [illegible] of financial investments into the home. The Court finds these were a gift to Ms. Freeman's separate property to ensure his children and their mother had stable housing." And in its oral ruling, which was expressly incorporated into the findings of fact and conclusions of law, the court further stated:

> This case is very interesting because the house was purchased at a time when the parties were beginning their family and were intending to live together in the sense that they had a new baby. However, all of the documents regarding the purchase of the home are in [Angela's] name. The loans that were taken out that I have documentation for are in [Angela's] name.
> …

[W]hat I do find is that this is a gift to [Angela]. You, yourself, sir, said that you were beginning the foundation of your home – the foundation of your family. At the time you were unemployed, you had a new baby, and your child needed some place to stay, you were unemployed. So I – the Court finds that this was a gift of a home to [Angela] of her separate property to make sure that your child was cared for.

You received the benefit of residing in that home during some period of time prior to incarceration and for some period of time of after your incarceration. But your mailing address was to her mother's house. So I cannot find on this record that there is definitive proof that proves beyond a preponderance of the evidence that you intended this to be your community property.
...
I am finding that you gave her the gift of making sure that she had a home for your child to live in while you were incarcerated and while you, as your witnesses testify, were out on the streets doing things that weren't necessarily legitimate.
...
And to any extent that you may have had a community interest or an interest because of a committed relationship that was offset by your ability to stay there, she was paying the bills at that point in time.

You may have contributed some, but there's no indication based on this record that you contributed a substantial amount of paying the bills or the mortgage that would leave this court to find that you have a definitive interest in any type of reimbursement under the case law.

Next, the court determined that the $94,000 in liquid assets in Oscar's name was community property but awarded the full amount to him as his separate property. In making this award, the court stated "to any extent that you may have had a community interest or a interest as a committed relationship [in the home], that's offset by the fact that you have $90,000 sitting in a bank account that this court finds is community property." The court similarly found that Oscar's towing business was community property, but awarded him the separate and community interest in the business. The court also awarded Angela $18,676 in attorney fees under RCW 26.09.140 based on her need and his ability to pay.

The trial court denied Oscar's motion for reconsideration. Oscar appeals.

II.

A.

Oscar argues that the trial court erred in mischaracterizing the home as Angela's separate property, and that this mischaracterization resulted in a manifestly unequal distribution.

A "trial court has broad discretion in distributing the marital property, and its decision will be reversed only if there is a manifest abuse of discretion." In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We review the trial court's findings of fact for substantial evidence and the conclusions of law de novo. Soltero v. Wimer, 159 Wn.2d 428, 433, 150 P.3d 552 (2007).

The court must make a "just and equitable" distribution of property in a marital dissolution action. RCW 26.09.080. In making this determination, the trial court considers (1) the nature and extent of the community property; (2) the nature and extent of the separate property; (3) the duration of the marriage; and (4) the economic circumstances of the parties. RCW 26.09.080. The distribution need not be equal. In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

Before making a distribution, the court must first characterize the property as community or separate. In re Marriage of Neumiller, 183 Wn. App. 914, 920, 335 P.3d 1019 (2014). The character of property as community or separate is determined at the

time of acquisition. In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). "Because Washington law favors community property, 'all property acquired during marriage is presumptively community property, regardless of how title is held.'" In re Marriage of Kile and Kendall, 186 Wn. App. 864, 876, 347 P.3d 894 (2015) (quoting Dean v. Lehman, 143 Wn.2d 12, 19, 18 P.3d 523 (2001)). This rebuttable presumption can be overcome by clear and convincing evidence showing the separate source of funds used to acquire it. In re Estate of Langeland, 177 Wn. App. 315, 325, 312 P.3d 657 (2013).

However, characterization of property as community or separate is not controlling. Brewer v. Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999). Rather, the court must ensure that the distribution of property is "'fair, just, and equitable under all the circumstances.'" Matter of Marriage of Olivares, 69 Wn. App. 324, 329, 848 P.2d 1281 (1993) (quoting In re Marriage of Hadley, 88 Wn.2d 649, 656, 565 P.2d 790 (1977). "Remand is required when it appears the trial court's division of the property was dictated by a mischaracterization of the separate or community nature of the property." Skarbek, 100 Wn. App. at 450.

Oscar asserts that the overwhelming uncontroverted evidence establishes the home was purchased during the existence of a committed intimate relationship (CIR), with significant financial contributions from both parties.[2] He contends the court erred in failing to place the burden of proof on Angela to prove by clear and convincing evidence that the home was her separate property. Angela contends that Oscar failed to prove

---

[2] Angela argues that appellate review of the existence of a CIR is barred by RAP 2.5(a) because Oscar did not raise it during trial or in his motion for reconsideration. But parties need not plead the existence of a CIR "when it is merely an evidentiary fact in a marriage dissolution proceeding." Neumiller, 183 Wn. App. at 922.

the existence of a CIR and that the resulting distribution of property was fair and equitable.

A CIR "is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." Connell v. Francisco, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). Five factors are relevant in determining the existence of a CIR: "continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties." Connell, 127 Wn.2d at 346. No single factor is determinative. In re Marriage of Pennington, 142 Wn.2d 592, 602, 14 P.3d 764 (2000). Property acquired during a CIR is presumed to be jointly owned. Langeland, 177 Wn. App. at 324-25.

In awarding the home to Angela as her separate property, the trial court did not appear to consider or expressly determine on the record the existence of a CIR. We agree that the record is not devoid of evidence that the parties were in a CIR when the home was purchased in 2005. However, we conclude that the trial court's distribution of property was fair and equitable regardless of the home's characterization as separate or community property.

Angela testified that if Oscar was to be awarded a community property interest in the home, she would be forced to take on unaffordable debt or sell it and move the children elsewhere. Angela also noted that Oscar had been approved for a loan to purchase his own home. The evidence also showed that Angela's savings were substantially lower than Oscar's, as was her earning potential. Moreover, the court's ruling expressly acknowledged that to the extent Oscar may have had a community interest in the home, it was offset by awarding Angela's community share in the liquid

8

assets to Oscar. We cannot say that the court's overall distribution of the parties' property was manifestly unreasonable.

B.

Oscar next argues that the trial court erred in allowing his counsel to withdraw prior to trial and disregarding his objection to the withdrawal. Oscar asserts that he was prejudiced by his attorney's withdrawal and complains that the trial court refused to consider Oscar's objection. But pro se litigants are held to the same standard as attorneys. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). Furthermore, the record shows that the trial court addressed Oscar's concerns. When Oscar asserted that his motion was untimely because he did not know about the deadline, the trial judge stated, "I completely understand" and asked what he wanted the court to do. Oscar responded, "[m]aybe a continuance so I can finally turn to do some more research because I don't really have nothing prepared." The court acknowledged that the attorney's withdrawal was improper and granted Oscar a four-week continuance. Oscar has not shown prejudice arising from this ruling.

Oscar further contends that the trial court erred in denying his new counsel's motion for a continuance to allow her more time to prepare. We disagree. "[A] party does not have an absolute right to a continuance, and the granting or denial of a motion for a continuance is reversible error only if the ruling was a manifest abuse of discretion." Willapa Trading Co. v. Muscanto, Inc., 45 Wn. App. 779, 785, 727 P.2d 687 (1986). "In exercising discretion to grant or deny a continuance, trial courts may consider many factors, including surprise, diligence, redundancy, due process,

materiality, and maintenance of orderly procedure." State v. Downing, 151 Wn.2d 265, 273, 87 P.3d 1169 (2004).

Here, in concluding that Oscar had not shown good cause for another continuance, the court noted Oscar's prior continuance, Oscar's ongoing failure to actively prepare for trial or participate in discovery, Angela's diligent preparation, the prejudicial impact upon Angela of an additional delay, and the case's relative lack of complexity. The court's ruling was reasonable and therefore not an abuse of discretion.

## C.

Oscar argues finally that the trial court erred in awarding $18,676 in attorney fees to Angela under RCW 26.09.140. We review a trial court's decision on attorney fees for an abuse of discretion. Goodell v. Goodell, 130 Wn. App. 381, 393, 122 P.3d 929 (2005).

Under RCW 26.09.140,

> [t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

"The overriding considerations are the need of the party requesting the fees, the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property." Matter of Marriage of Van Camp, 82 Wn. App. 339, 342, 918 P.2d 509 (1996). "In considering the financial resources of both parties, the court balances the needs of the requesting party against the other party's ability to pay." Leslie v. Verhey, 90 Wn. App. 796, 805, 954 P.2d 330 (1998).

10

Oscar asserts that Angela did not request fees based on RCW 26.09.140, but rather as a penalty for intransigence. He contends that the trial court's award of fees based on RCW 26.09.140 despite Angela's stronger financial position and her failure to present any evidence or argument supporting an award on that basis constituted a clear abuse of discretion. We disagree.

Oscar's characterization of Angela's arguments at trial is incorrect. Although Angela in her trial brief alleged that Oscar unnecessarily increased the cost of litigation, she expressly based her request for attorney fees on her need and his ability to pay pursuant to RCW 26.09.140. Angela's attorney fee affidavit also asserted "Ms. Freeman has a need for attorney's fees and the Respondent has an ability to pay." In awarding fees to Angela, the trial court found "based on need and ability to pay that she has the need, you have the ability to pay, you have $90,000 sitting in an account." The court also found "that this is not an unreasonable request given the large amounts of cash that Mr. Freeman seems to be able to – be able to one way or another have access to on a very short period of time." The record also shows that Angela submitted extensive documentation regarding her financial situation, including her fixed income, debts, and expenses. Oscar has not satisfied his burden of demonstrating that the trial court's award was untenable or manifestly unreasonable.

Oscar asserts that In re Marriage of Chandola, 180 Wn.2d 632, 327 P.3d 644 (2014) requires reversal of the attorney fees award. In Chandola, the court denied both parties' requests for attorney fees on appeal pursuant to RCW 26.09.140, noting the record did not establish a disparity in the parties' income, financial obligations, or savings that would justify such an award. The court also denied the wife's request for

fees on appeal based on the husband's alleged intransigence. Here, in contrast, Oscar is appealing from a trial court's determination to award fees based on Angela's need and Oscar's ability to pay. Chandola does not compel a different result here.

Affirmed.

_Mann, A.C.J._

WE CONCUR:

_Leach, J._

_Dwyer, J._