[No. 6166–1.   Division One.   April 9, 1979.]

GEORGE MARTONIK, *Appellant,* v. MARTIN J. DURKAN, ET AL, *Respondents.*

■■■■■■■■■■■

■■■■■■■■■■■

*Richard B. Sanders,* for appellant.

*Rush & Kleinwachter* and *William J. Rush,* for respondents.

■■■■■■■■■■■

SWANSON, A.C.J.—George Martonik appeals on an adverse jury verdict in a suit against Martin J. Durkan for alleged defamation, contending the trial court erred by denying Martonik a continuance and by misinstructing the jury. We find no error and affirm.

Martonik filed an action for libel against Martin Durkan in King County on December 18, 1974, alleging Durkan had falsely accused Martonik of placing an electronic surveillance device on Durkan's telephone.[1] An initial trial date was set for January 14, 1976. Counsel for Martonik withdrew, however, on December 8, 1975. A second attorney entered a notice of appearance on Martonik's behalf on December 22, 1975. Following a motion for continuance and the payment of terms by Martonik, the trial court rescheduled the case for April 5, 1976, as "plaintiff's previous counsel withdrew from the cause and his present counsel needs time to prepare the case for trial. . . ."

In March 1976, defendant Durkan moved for disqualification of Martonik's attorney due to his possible involvement in earlier grand jury proceedings concerning Durkan. The motion was granted, and the trial date continued until "after December 15, 1976."

---

[1]Martonik also filed an action in Pierce County in July 1973. In July 1975, Martonik took a voluntary nonsuit therein.

In May 1977, as no further action had been taken, Durkan moved for dismissal of the cause for want of prosecution. On May 31, 1977, attorney Lawrence W. Moore filed a notice of appearance on behalf of Martonik. By agreement of counsel and upon application to the court, trial date was set for August 22, 1977. On August 12, 1977, Moore filed a motion to withdraw as attorney of record for Martonik. According to his affidavit Martonik received notice of Moore's intention August 15, 1977.

On August 20, 1977, Martonik contacted another attorney, George Apostle, who agreed to represent Martonik provided a continuance could be obtained to allow him time to prepare for trial.

On August 22, 1977, Moore and Martonik appeared before the presiding judge. Moore's motion to withdraw was approved without objection. The presiding judge then refused to grant a further continuance. Martonik again raised the motion for continuance at trial, arguing he would be without counsel. The trial court denied the motion, noting in its judgment the interests of the defendant and "that this matter has been pending since approximately February of 1973." Thereupon Martonik proceeded pro se. Present was George Apostle who aided Martonik in jury selection but averred to have "no interest in this case other than as a spectator."

On appeal, Martonik initially argues denial of his motion for a continuance constituted an abuse of discretion and subjected him to prejudice as a pro se plaintiff. In support, Martonik cites cases from other jurisdictions. *See, e.g., Shankle v. Shankle,* 289 N.C. 473, 223 S.E.2d 380 (1976); *Imhoff v. Hammer,* 305 A.2d 325 (Del. 1973); *Reecy v. Reecy,* 132 Ill. App. 2d 1024, 271 N.E.2d 91 (1971). In view of the standard of review enunciated in this jurisdiction and the facts herein, we do not find these cases persuasive.

In *Jankelson v. Cisel,* 3 Wn. App. 139, 141–42, 473 P.2d 202 (1970), now Chief Justice Robert Utter proffered the following guidelines for the review of a withdrawal of attorney and concomitant motion for continuance:

The withdrawal of an attorney in a civil case or his discharge does not give the party an absolute right of continuance. *Grunewald v. Missouri Pac. R.R.,* 331 F.2d 983 (8th Cir. 1964); Annot., 48 A.L.R.2d 1155 (1956). The rationale for this rule is that if a contrary rule should prevail, all a party desiring a continuance, under such circumstances, would have to do would be to discharge his counsel or induce him to file a notice of withdrawal. *Peterson v. Crockett,* 158 Wash. 631, 291 P. 721 (1930).

The corollary of this rule is that the decision whether to grant or to refuse a continuance in such a situation rests in the discretion of the court to which the application is made, and the ruling of the trial court in the exercise of that discretion will not be disturbed except for manifest abuse of discretion. *Swope v. Sundgren,* 73 Wn.2d 747, 440 P.2d 494 (1968); *Barrinuevo v. Barrinuevo,* 47 Wn.2d 296, 287 P.2d 349 (1955); *Donaldson v. Greenwood,* 40 Wn.2d 238, 242 P.2d 1038 (1952); *see* note and cases cited in 26 Wash. L. Rev. 212 (1951).

This standard was approved and commented upon by now Justice Charles Horowitz in *Balandzich v. Demeroto,* 10 Wn. App. 718, 720, 519 P.2d 994 (1974):

Whether a motion for continuance should be granted or denied is a matter discretionary with the trial court, reviewable on appeal for manifest abuse of discretion. *Jankelson v. Cisel,* 3 Wn. App. 139, 473 P.2d 202 (1970). In exercising its discretion, the court may properly consider the necessity of reasonably prompt disposition of the litigation; the needs of the moving party; the possible prejudice to the adverse party; the prior history of the litigation, including prior continuances granted the moving party; any conditions imposed in the continuances previously granted; and any other matters that have a material bearing upon the exercise of the discretion vested in the court.

That court concluded:

> Viewed against the totality of the circumstances brought to the trial court's attention on plaintiffs' motion for a seventh continuance, we cannot say the court's exercise of discretion was "upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

*Balandzich*, at 721. *See State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

While the facts herein may not be as dramatic as elsewhere, we cannot state that "reasonable men" could not differ regarding the action taken by the presiding and trial courts. Certainly, the long delay in prosecution of this cause, earlier continuances, and the interests of the defendant preclude us from holding those courts' exercise of discretion to be "upon a ground, or to an extent, clearly untenable or manifestly unreasonable." *Friedlander v. Friedlander*, 80 Wn.2d 293, 298, 494 P.2d 208 (1972).

Following trial, the court instructed the jury that Martonik shouldered the burden of proving any defamatory statements of Durkan were made recklessly or with knowledge of their falsehood, rather than through mere negligence, pursuant to *New York Times Co. v. Sullivan*, 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964). Therein the Supreme Court announced the now well established rule that an elected public official must prove actual malice to recover for a libel against him. In *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 18 L. Ed. 2d 1094, 87 S. Ct. 1975 (1967), that rule was expanded to encompass "public figures."

Martonik argues that the trial court erred by characterizing him to be a public figure and thus increasing his burden of proof. At the time of the alleged defamation Martonik served as clerk of the Washington State Senate. By his own admission, Martonik previously had been involved in and chaired numerous political campaigns throughout the state. As clerk, he stated he was approached to serve as an "auxiliary security officer" in the senate. In

his opening statement, Martonik contended that the cause for Durkan's suspicion of a telephone tapping was an effort by Martonik to enlist the aid of local police authorities to "trap" an individual making obscene calls into a suite of offices occupied by Durkan and others.

We do not reach the issue of whether the trial court correctly characterized Martonik as a public figure, for the recent decision in *Clawson v. Longview Pub. Co.,* 91 Wn.2d 408, 589 P.2d 1223 (1979), establishes that Martonik correctly could have been termed a "public official." As the burden of proof is identical for both categorizations, any error by the trial court would be harmless.

In *Clawson,* the jury held a newspaper defamed Clawson, Administrator of the Cowlitz Motor Pool, by publishing a story stating he had installed parts in a private automobile at county expense. The trial court adjudged Clawson need only prove negligence on the part of the newspaper. The Supreme Court reversed the judgment and remanded for a new trial, holding Clawson to be a public official and thus responsible for the greater burden of proof of actual malice. The court reasoned in part:

> The "actual malice" standard is applicable to any aspect of a public official's life which might touch on an official's fitness for his position. *See Garrison v. Louisiana,* 379 U.S. 64, 13 L. Ed. 2d 125, 85 S. Ct. 209 (1964). With officials wielding general power and exercising broad discretion, the scope of that standard is necessarily comprehensive, encompassing virtually all of the public official's life. *See Garrison v. Louisiana, supra; Monitor Patriot Co. v. Roy,* 401 U.S. 265, 28 L. Ed. 2d 35, 91 S. Ct. 621 (1971); *Ocala Star–Banner Co. v. Damron,* 401 U.S. 295, 28 L. Ed. 2d 57, 91 S. Ct. 628 (1971). However, with persons such as respondent, the "public official" standard fails to sweep so broadly; exposure is limited to matters more closely connected to actual job performance. In essence, we find two pertinent variables: (1) the importance of the position held, and (2) the nexus between that position and the allegedly defamatory information—specifically, how closely the defamatory material bears upon fitness for office. In

comparison with other public positions carrying with them independent authority and discretion, respondent's former position is near the bottom of those that could arguably be considered "public official" positions in the First Amendment sense. However, the nexus between respondent's position and the defamatory allegations could not be closer, as they related directly to respondent's job performance. This latter fact bears heavily upon the "public official" determination in this case.

*Clawson*, at 416–17.

In the instant situation, Martonik acted within what he understood to be the scope of his duties as clerk of the Washington State Senate by attempting to help in the identification of an obscene telephone caller. The secretary being harassed wrote a memorandum, "[i]n accordance with [Martonik's] request for a summary recollection of the obscene phone calls I had complained about . . . and to aid also the Sheriff's office in its investigation. . . ." The memorandum was addressed, "To: George Martonik, Senate Security," and concluded, "I especially appreciate your latest arrangement of telephone–tape recorder hookup to my number."

In view of the close nexus between Martonik's actions as clerk in the area of security and the alleged defamatory statement by Durkan that his phone was tapped by Martonik, we find the trial court could have correctly characterized Martonik to be a public official pursuant to the *Clawson* rationale. Thus, we find no error in trial instructions requiring Martonik to demonstrate actual malice on Durkan's part.

Martonik's final argument turns on the accuracy of instruction No. 6 which reads:

> Any statements made by the defendant while he was engaged in his legislative duties are absolutely privileged and he cannot be held legally liable for any alleged slander by way of statements that were made while he was performing his legislative duties.

The basis for such legislative privilege lies in article 2, section 17 of the Washington State Constitution:

Freedom of Debate. No member of the legislature shall be liable in any civil action or criminal prosecution whatever, for words spoken in debate.

Martonik argues this constitutional provision must be interpreted strictly and that instruction No. 6 exceeds the bounds of "words spoken in debate." We believe the reasoning in Attorney General Opinion, May 14, 1962, more likely to mirror the intent of the framers of the constitution:

No decisions of the Washington court involving application of this principle have been found. Nor do we find any great number of pertinent judicial decisions from other jurisdictions.

However, to the extent that the matter has been considered by the courts, there appears to have been established with a high degree of unanimity the principle that constitutional provisions similar to our own Article II, § 17, *supra,* clothe members of the legislature with an *absolute privilege* to utter or publish defamatory statements *in the course of performance of legislative business.*

Regardless, however, of the accuracy of the Attorney General's opinion, we find the argument without merit.

Martonik appears to have contended that Durkan defamed him on at least two occasions—once in a telephone call to a reporter who subsequently published a news story, and secondly, before a senate committee. Clearly, private communications with the media would not constitute a legislative duty; thus instruction No. 6 would not be applicable.

In the other situation, addressing a legislative committee, the instruction would carry weight. Martonik, however, failed to offer adequate alternative instructions regarding legislative privilege in such situation. Indeed, Martonik's proposed instructions parallel that given. His proposed instructions Nos. 1 and 2 read:

1

A publication to be privileged, as a report to a committee on an employee's qualifications, must be full and accurate or any immunity is lost. And if the report is

garbled or fragmented to a point where a false imputation is made by the defendant about the plaintiff, defendant is subject to liability.

2

A qualified privilege accorded an employer or one acting on behalf of an employer, such as the Washington State Senate, is accorded only to one who accurately reports the qualifications to a committee, and is lost if he is motivated by malice and acts from ulterior motives designed to injure.

The law is clear that "Misdirection may be error, but nondirection, in the absence of a request, is never error." *State v. Myers,* 53 Wn.2d 446, 449, 334 P.2d 536 (1959). Without the presentation of a written instrument representing the argument now before us, we have nothing to review. *State v. Fischer,* 57 Wn.2d 262, 356 P.2d 983 (1960).

Finding no error, we affirm.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied July 9, 1979.

Review denied by Supreme Court January 16, 1980.