IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 38707-1-III |
| | ) | |
| MATTHEW DAVID ALBRIGHT, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| NICOLE DONN ALBRIGHT, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Nicole Albright appeals from orders dissolving her marriage to Mathew Albright. We affirm.

## FACTS

Matthew Albright petitioned for legal separation from his wife, Nicole Albright, in June 2019. This petition was later converted to one for dissolution. At the time of Mr. Albright's petition, the couple had three minor children who were living in the family home with Ms. Albright.

During the early stages of the proceedings, Mr. Albright filed a sworn declaration expressing concerns that Ms. Albright's mental health was having a detrimental impact on her parenting capabilities. Mr. Albright also filed declarations signed by the Albrights' adult daughter and Ms. Albright's sister verifying his concerns. The trial court appointed a guardian ad litem (GAL) to investigate.

Based on an initial investigation, the GAL recommended a comprehensive psychological evaluation of Ms. Albright. The trial court agreed and, in June 2020, issued a CR 35 order directing Ms. Albright to undergo a psychological examination without delay. The following month, after the parties agreed on a psychologist to conduct the CR 35 exam, the court entered an order defining the scope and terms of the exam, including directing Ms. Albright to provide the psychologist's report to Mr. Albright, his counsel, and the GAL immediately upon issuance.

This report never materialized.[1] Ms. Albright also failed to provide meaningful responses to discovery requests. Aided by her lawyer, Stephen Eugster, Ms. Albright consistently violated court orders over a period of 15 months, drawing repeated sanctions and contempt orders. The trial court made factual findings, unchallenged here, that

---

[1] The record indicates Ms. Albright did contact the psychologist on September 29, 2020, to make an appointment—32 days after the trial court gave her 5 days to make such an appointment. Ms. Albright's counsel, Stephen Eugster, apparently misled the psychologist about their role in the case: Mr. Eugster told the psychologist he was retaining them to prepare an "evaluation [that] would establish that [Ms. Albright] *does not have any mental disorder*." Clerk's Papers (CP) at 1491. Ms. Albright apparently met with the psychologist twice. Then, in August 2021—more than a year after the CR 35 exam had been ordered—Ms. Albright began persistently phoning the psychologist's office and left a message with their receptionist "demanding that a report *not be written*." *Id*. at 1492. The psychologist repeatedly sought clarification from Mr. Eugster about how to proceed, but Mr. Eugster never "properly responded." *Id.* at 1494. Given this strange course of events, the psychologist was unable to complete an evaluation and report.

Ms. Albright's intransigence and willful disobedience of court orders substantially

prejudiced her husband's preparation for trial. Trial was continued—for the fourth time—

to October 18, 2021.

In mid-September 2021, with that trial date weeks away, Mr. Eugster served and

filed a notice of intent to withdraw as Ms. Albright's attorney. Mr. Albright initially

objected to Mr. Eugster's withdrawal, but later withdrew that objection. Ms. Albright

never objected. Mr. Eugster subsequently filed a notice of limited appearance, explaining

that it was solely for the purpose of arguing for another trial continuance on behalf of

Ms. Albright. He requested a continuance on the morning of the first day of trial. Ms.

Albright told the court she wanted more time to find an attorney because Mr. Eugster was

incompetent due to senility. The trial court declined to grant a continuance and thereafter

excused Mr. Eugster from the case. Ms. Albright represented herself pro se throughout

the multiday trial.

The trial court orally ruled in November 2021, followed by written orders the

following month. Two aspects of the trial court's rulings are pertinent to this appeal: the

court's award of spousal maintenance and the court's valuation of the family home.

As to spousal maintenance, the trial court ordered Mr. Albright to pay $400 per

month for 12 months. In setting this amount, the trial court expressed frustration that

Ms. Albright had provided no evidence of her financial resources or needs. Ms. Albright made a conclusory claim that she could not work due to disability, but she provided no specifics or supporting documentation.

Mr. Albright was awarded the family home so that he could move back into it with the parties' minor children.[2] The court noted it had little information regarding the value of the home. The only documentary evidence submitted at trial consisted of a printout from the Spokane County Assessor's office, showing the tax-assessed value of the property for the last several years. *See* Ex. P-14. Mr. Albright requested the court adopt the 2019 assessed value of $518,900. Mr. Albright also testified that he believed the home needed costly repairs affecting its current value. The trial court valued the home at $625,200, which was its 2021 tax-assessed value.

On December 14, 2021, Benjamin Platt appeared as Ms. Albright's attorney of record in the dissolution action. Despite this, and despite Mr. Eugster's purported withdrawal months prior, Mr. Eugster filed a notice of appeal on behalf of Ms. Albright—initiating this appeal—on January 4, 2022.

---

[2] The trial court granted Mr. Albright sole physical and legal custody of the parties' children and ordered Ms. Albright to participate in reunification counseling with the children, as she had made no effort over the past 11 months to exercise her court-ordered visitation rights.

Six days later, Mr. Platt filed a motion for reconsideration or for a new trial. Mr. Platt also noted in his motion that Mr. Eugster had filed a notice of appeal on behalf of his client despite no longer being Ms. Albright's attorney of record.

The trial court issued a letter opinion on April 25, 2022, partially granting and partially denying reconsideration. As relevant here, the trial court granted reconsideration of its spousal maintenance award. The court increased Mr. Albright's maintenance obligation to $1,000 per month for 60 months. The trial court entered formal orders the following month.

Mr. Platt then replaced Mr. Eugster as Ms. Albright's counsel of record in the already-filed appeal. *See* Notice of Withdrawal and Substitution of Counsel, *In re Marriage of Albright*, No. 38707-1-III (Wash. Ct. App. Feb. 7, 2022).

## ANALYSIS

Ms. Albright makes four claims on appeal: (1) the trial court erroneously allowed Mr. Eugster to withdraw, (2) alternatively, the trial court erroneously denied Ms. Albright a continuance in light of Mr. Eugster's withdrawal, (3) the trial court's maintenance award was unreasonably low, and (4) the trial court improperly relied on the family home's tax-assessed value in valuing it. We address each claim in turn.

*Withdrawal of counsel*

CR 71 governs the withdrawal of counsel in a superior court civil case. The rule provides that a retained attorney "may withdraw" by filing a notice of intent to withdraw and serving such notice on the attorney's client and any opposing parties. CR 71(c)(1). The notice must "specify a date," at least 10 days after service of the notice, on which the withdrawal will be effective. *Id.* An attorney's withdrawal is ordinarily "effective[] without order of court." CR 71(c)(3). A court order allowing the attorney to withdraw is necessary only when "a timely written objection is served." CR 71(c)(4).

We give broad deference to a court's handling of withdrawal, reviewing only for abuse of discretion. *Kingdom v. Jackson*, 78 Wn. App. 154, 158, 896 P.2d 101 (1995).

The trial court did not abuse its discretion here. Mr. Eugster's notice of intent to withdraw gave Ms. Albright the requisite 10-day notice. And on the first day of trial, there was no effective objection to his withdrawal. In fact, Ms. Albright actively supported Mr. Eugster's withdrawal, claiming he was too frail and senile to provide proper representation. Ms. Albright told the trial court, "I actually of my own accord have been able to see Mr. Eugster going downhill. I mean, I can see it with my own eyes. . . . [Mr. Eugster's] health was failing, and . . . I could see that I wasn't going to be being represented properly." 1 Rep. of Proc. (RP) (Oct. 18, 2021) at 20, 22.

Despite agreeing to Mr. Eugster's withdrawal, Ms. Albright now contends she did not receive proper notice that Mr. Eugster's representation of her had ended because he failed to file a notice of completion of limited appearance after the trial court denied a motion for trial continuance argued by Mr. Eugster. We disagree. The filing of a notice of completion of limited appearance is a mechanism for an attorney to withdraw "without the necessity of leave of court." CR 70.1(b). Here, however, Mr. Eugster had leave of court: after the trial court denied Ms. Albright's motion for a continuance, the judge told Mr. Eugster, "[W]e're done with that particular issue. So, Mr. Eugster, you're excused." 1 RP (Oct. 18, 2021) at 26.

*Motion for trial continuance*

Ms. Albright contends the trial court abused its discretion by denying her motion for a continuance because the denial forced her to proceed without a lawyer. This claim is also reviewed for abuse of discretion. *Trummel v. Mitchell*, 156 Wn.2d 653, 670, 131 P.3d 305 (2006).

In exercising the discretion over whether to continue a trial, courts should consider "the totality of the circumstances brought to the trial court's attention." *Balandzich v. Demeroto*, 10 Wn. App. 718, 721, 519 P.2d 994 (1974). Relevant factors include the necessity of a prompt disposition; the movant's needs; possible prejudice to the

nonmovant; and prior history of the litigation, including prior continuances. *Id.* at 720;

*see also State v. Downing*, 151 Wn.2d 265, 273, 87 P.3d 1169 (2004) ("[T]rial courts may

consider many factors, including surprise, diligence, redundancy, due process, materiality,

and maintenance of orderly procedure.").

Here, the trial court had valid reasons to deny a continuance. First, Mr. Albright's

counsel was ready to proceed. *See Willapa Trading Co. v. Muscanto, Inc.*, 45 Wn. App.

779, 786, 727 P.2d 687 (1986) (affirming denial of motion for continuance where trial

court cited "the prejudicial impact of a continuance on a party who is prepared and ready

for trial and the advantages of avoiding delay in litigation whenever possible").

The trial court also properly noted that there were growing children in

Mr. Albright's custody who needed finality and that Mr. Albright had already spent

enormous amounts of money on the dissolution action. *See Martonik v. Durkan*, 23 Wn.

App. 47, 51, 596 P.2d 1054 (1979) (holding denial of pro se plaintiff's motion for

continuance not an abuse of discretion where "interests of the defendant" weighed against

continuance); *Odom v. Williams*, 74 Wn.2d 714, 718, 446 P.2d 335 (1968) (affirming

denial of defendant's request for continuance where continuing trial "would have worked

an unjustified hardship on plaintiffs").

Moreover, Ms. Albright's claim that she lacked sufficient time to hire a replacement for Mr. Eugster rings hollow. Ms. Albright told the trial court she had realized she needed to replace Mr. Eugster the previous summer, months prior to the trial date. Yet she failed to act in a reasonably prompt manner. The trial court sensibly decided to prevent Ms. Albright from "control[ling] the trial calendar" of Spokane County "through delayed employment of substitute counsel." *Willapa Trading Co.*, 45 Wn. App. at 786; *see also id*. (affirming denial of motion for continuance where movant had known for two months that their attorney was withdrawing).

At the time Mr. Eugster withdrew, the parties' case had been pending for nearly two and one-half years. Several continuances had already been granted. The delay was primarily due to Ms. Albright's own intransigence.[3] The court had ample reason to reject Ms. Albright's request for more time. *See Martonik*, 23 Wn. App. at 51 (holding that "long delay in prosecution of this cause" and "earlier continuances" were valid bases for denying continuance); *Odom*, 74 Wn.2d at 718 (affirming denial of continuance because

---

[3] The trial court twice entered factual findings that Ms. Albright's willful violation of discovery orders "substantially prejudiced" Mr. Albright's preparation for trial. CP at 1098, 1414. Because Ms. Albright does not challenge those findings, they have become verities on appeal. *See Thomsen Ruston, LLC v. PC Collections, LLC*, 25 Wn. App. 2d 382, 398, 523 P.3d 805 (2023).

continuing trial would have "added unpredictable further delay to an already overly

extended proceeding").

Ms. Albright notes the trial court's denial of her motion for a continuance forced

her to proceed pro se. But the withdrawal of a civil litigant's attorney, on its own, is not

a compelling reason to continue trial. *See Jankelson v. Cisel*, 3 Wn. App. 139, 141, 473

P.2d 202 (1970); *Martonik*, 23 Wn. App. at 49. "The rationale for this rule is that if

a contrary rule should prevail, all a party desiring a continuance . . . would have to do

would be to discharge [their] counsel or induce [them] to file a notice of withdrawal."

*Jankelson*, 3 Wn. App. at 141.

## Spousal maintenance

Ms. Albright argues the trial court abused its discretion in setting spousal

maintenance at $400 per month for 12 months.[4] However, the original maintenance award

is no longer in effect. On reconsideration, the trial court ordered Mr. Albright to provide

maintenance in the amount of $1,000 per month for 60 months. Ms. Albright did not

appeal the increased maintenance award issued after reconsideration. Nor does she

---

[4] We note Ms. Albright did not help make her case for a larger maintenance award at trial because she failed to furnish evidence of her financial resources or needs. Given Ms. Albright's lack of cooperation, she was likely fortunate to receive any maintenance award at all.

provide any substantive argument as to why the revised maintenance award is improper,

besides complaining that Mr. Albright should have to pay more simply because, she

believes, he can. *See In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 474-75, 421 P.3d

1046 (2018) (rejecting argument that divorcing spouses "must be placed in roughly

equivalent financial positions for the rest of their lives"). We deny review of this issue as

moot, given that the maintenance award Ms. Albright appealed from has since been

displaced.[5]

*Property valuation*

In valuing assets in a dissolution proceeding, trial courts have "wide discretion to

consider all relevant facts and circumstances." *In re Marriage of Hay*, 80 Wn. App. 202,

204, 907 P.2d 334 (1995). This court "will not disturb a property valuation having

---

[5] Because Ms. Albright had already initiated this appeal before she moved for reconsideration in the trial court, the trial court technically needed our permission before entering a formal order increasing Ms. Albright's spousal maintenance award. *See* RAP 7.2(e). However, the interests of justice would not be served by further prolonging this litigation, so we consider the revised award to be legally effectual. *See City of Seattle v. Holifield*, 150 Wn. App. 213, 224-25, 208 P.3d 24 (2009) ("We agree that one of the parties should have obtained permission from this court before the trial court formally entered [a post-appeal order altering the trial court's prior decision]. However, we construe the Rules of Appellate Procedure liberally to promote justice and may waive or alter those rules in order to serve the ends of justice."), *rev'd on other grounds*, 170 Wn.2d 230, 240 P.3d 1162 (2010).

reasonable support in the trial record." *In re Marriage of Pilant*, 42 Wn. App. 173, 178, 709 P.2d 1241 (1985).

The trial court reasonably valued the parties' home based on its 2021 tax-assessed value. We recognize assessed values have historically been criticized as imperfect reflections of market value. *See McClure v. Delguzzi*, 53 Wn. App. 404, 408, 767 P.2d 146 (1989) (noting that it is common knowledge that assessor's values are "relative, not actual"). But there is no authority prohibiting consideration of assessed value in a dissolution proceeding.[6] Given Ms. Albright failed to offer an alternative valuation, she cannot reasonably complain about the trial court's decision. *See In re Marriage of Hadley*, 88 Wn.2d 649, 658-59, 565 P.2d 790 (1977) (no abuse of discretion when court sets value according to the only evidence at hand); *see also In re Marriage of Zahm*, 138 Wn.2d 213, 218-19, 978 P.2d 498 (1999) (noting trial court's task in dissolution proceedings is to divide assets fairly, not necessarily to achieve perfect mathematical precision).

---

[6] Ms. Albright chiefly relies on *McClure*, which is inapposite because it arose outside the dissolution arena, in the context of foreclosure sales. In that context, it is within the court's discretion to simply decline to value an asset. *See McClure*, 53 Wn. App. at 407-08. By contrast, in the dissolution context, trial courts are required to value and distribute marital property based on the evidence presented to them. *See* RCW 26.09.090; *In re Marriage of Hadley*, 88 Wn.2d 649, 657, 565 P.2d 790 (1977).

CONCLUSION

The dissolution orders are affirmed. We deny both parties' requests for attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Siddoway, J.P.T.[7]

---

[7] Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.