

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39108-6-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 39109-4-III) |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RYAN R. BRONOWSKI, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Ryan Bronowski appeals his convictions for possession of a stolen motor vehicle and attempting to elude a pursuing police vehicle. We affirm both convictions. However, we remand for resentencing in the stolen motor vehicle case. With respect to the attempt to elude case, we remand for the limited purpose of striking the crime victim penalty assessment.

## FACTS

This appeal concerns two criminal prosecutions of Ryan Bronowski: one for attempting to elude a pursuing police vehicle and one for possession of a stolen vehicle. Although the two prosecutions were separate, sentencing occurred on the same day but in

front of different judges. Mr. Bronowski filed a notice of appeal in each superior court case. Those appeals have been consolidated for review.

*Possession of a stolen motor vehicle*

On an early morning in 2021, Andrew Paine, an employee of Quality Blacktop and Striping, discovered that one of the company's trucks was missing from the company yard. The yard was enclosed by a gated chain link fence. The trucks were all accounted for when Barrington Young, the business owner, left work the previous day, and the trucks and fence gates had been locked. Mr. Paine called Mr. Young to let him know about the missing truck. Mr. Young confirmed that he had neither taken the truck nor given anyone else permission to take the truck or to lend it to anyone. Mr. Young arrived at the business shortly thereafter. It was later discovered that pins had been removed from the bottom of the chain link fence. This damage to the fence was consistent with damage to the truck, indicating that someone had driven the truck through the fence.

Mr. Young called the local nonemergency crime hotline (Crime Check) and reported the truck as stolen. Not long after that call ended, as he stood in the yard discussing the theft with Mr. Paine, Mr. Young noticed the stolen truck pass by on a nearby road. Mr. Paine and Mr. Young got into another of the company's trucks and followed the stolen truck, honking their horn. During the pursuit, Mr. Young again called

Crime Check. The driver of the stolen truck—later identified as Ryan Bronowski—began

operating the truck erratically, swerving rapidly from lane to lane, making sudden turns,

and barreling through red lights. Mr. Bronowski was not employed by Quality Blacktop.

Eventually, Mr. Bronowski reached a dead end. He pulled over, jumped out of

the stolen truck, left it running, and began to run away. Mr. Young and Mr. Paine got

out of their own truck and followed Mr. Bronowski on foot. They caught up to him, and

Mr. Young held Mr. Bronowski down until police arrived. Two employees of a nearby

business, Yost Gallagher Construction, witnessed Mr. Bronowski's apprehension.

The State charged Mr. Bronowski with one count of possession of a stolen motor

vehicle. *See* RCW 9A.56.068(1). Over the following nine months, defense counsel

successfully moved for six continuances of trial.

In his fifth motion for a continuance, filed in January 2022, counsel claimed to

have recently discovered the existence of two "neutral witnesses"—the bystanders who

worked at Yost Gallagher. Clerk's Papers, *State v. Bronowski*, No. 39109-4-III (2 CP)

at 192. The trial court granted the motion and continued trial.[1] In his next motion to

---

[1] The superior court asked Mr. Bronowski if he objected to his counsel's motion to continue, to which Mr. Bronowski responded confusingly, "I do, but I don't," stating that he agreed his lawyer needed more time to prepare but he also did not want to "sign[]
over" his right to a speedy trial. 1 Rep. of Proc. (RP) (Jan. 13, 2022) at 26.

continue trial, filed two months later, trial counsel explained the State had just notified

him of the existence of another potential witness, a "Mr. Gary," whom he had not yet

contacted. *Id*. at 196. Counsel did not mention the Yost Gallagher witnesses in this

motion or aver that counsel still needed to contact them. The trial court granted the

motion and continued trial for a sixth time.[2] The judge informed the parties that this

would be the "final continuance." Rep. of Proc. (RP) (Mar. 10, 2022) at 10. Trial was

scheduled for April 18, 2022.

On the morning of April 18, after going through the State's motions in limine, the

trial court turned to Mr. Bronowski's counsel and asked if they had any motions to bring

before the start of jury selection. Defense counsel stated, "at this time, [I] have to ask the

Court to continue the case." 1 RP (Apr. 18, 2022) at 15. Counsel stated they needed more

time to contact the Yost Gallagher witnesses. The trial judge sent the parties to the

superior court's chief criminal judge to address the last-minute request for a continuance.

---

[2] The State objected to this motion, reasoning that Mr. Bronowski's counsel had been afforded plenty of time to prepare and that Mr. Gary had no firsthand knowledge of the crime, which defense counsel could discover through a five-minute phone call. Mr. Bronowski also objected to his counsel's motion. The trial court agreed and began its oral ruling "deny[ing] the continuance." RP (Mar. 10, 2022) at 8. Mr. Bronowski suddenly interjected, saying, "I didn't know you were going to try to reject my attorney's continuance [if I objected]." *Id.* at 9. Given Mr. Bronowski's sudden change of heart, the apparently perplexed trial court stated it would grant "one final continuance." *Id.* at 10.

4

Mr. Bronowski's counsel told the chief criminal judge they needed more time to locate the Yost Gallagher witnesses. The judge asked why the defense had called ready at the trial readiness hearing. Counsel said simply that a different public defender had covered for them at that hearing and may have called ready.

The chief criminal judge denied the continuance. The court reasoned that "[t]here's no indication in the record" that more time would help counsel reach the witnesses, the defense had had "a lengthy period of time" to prepare, trial had been continued six times, and the court had already warned the parties the sixth continuance was "final." RP (Apr. 18, 2022) at 5-6. The court entered a written order citing all of those reasons for denying the continuance, and adding that defense counsel had "waited until [the] morning of trial," so the request appeared "strategic in nature." 2 CP at 30-31.

Trial proceeded that morning. Mr. Young, Mr. Paine, and a sheriff's deputy testified as to the discovery of the stolen truck and the apprehension of Mr. Bronowski.

During his cross-examination of Mr. Young, defense counsel asked if he told the Crime Check operator he was "going to beat [Mr. Bronowski's] ass?" 1 RP (Apr. 19, 2022) at 68. The trial prosecutor promptly objected, stating, "That is irrelevant." *Id*.

Defense counsel responded, "[I]t goes to state of mind." *Id*. The trial court sustained the objection and forbade the inquiry.[3]

Mr. Bronowski testified on his own behalf. He claimed that on the day of his apprehension, he had been staying at a friend's house and was introduced to a person named "Ant." *Id*. at 86-87, 105-06. According to Mr. Bronowski, he needed a ride and Ant let Mr. Bronowski borrow the Quality Blacktop truck. Mr. Bronowski claimed he did not know the truck was stolen. He testified that he could not recall whether he noticed the large company logo on the driver's side of the truck. Nevertheless, he also claimed he asked Ant to call Crime Check to determine whether the truck was stolen and claimed Ant told him it was not.

Mr. Bronowski testified he tried to evade the truck that was pursuing him because he was frightened. He claimed he saw a handgun in the pursuing truck and that Mr. Young and Mr. Paine robbed him when they apprehended him. These factual claims prompted objections from the trial prosecutor. On both occasions, the prosecutor said the basis for her objection was that Mr. Bronowski was "mischaracteriz[ing] . . . the facts."

---

[3] Defense counsel also said in his opening statement that Mr. Young "planned to beat Mr. Bronowski's ass." *Id.* at 21. The prosecutor objected to this remark and the trial court sustained the objection.

*Id*. at 93, 98. The trial court overruled both objections, reasoning, "It's his testimony,"

and "I'll let him testify." *Id*.

The jury found Mr. Bronowski guilty.

*Attempting to elude a pursuing police vehicle*

In November 2020, the State charged Mr. Bronowski by information with one

count of attempting to elude a police vehicle. *See* RCW 46.61.024(1). The charging

document alleged that Mr. Bronowski

> did willfully fail and refuse to immediately bring his vehicle to a stop and
> did drive his vehicle in a reckless manner while attempting to elude a
> pursuing police vehicle after being given a visual or audible signal to bring
> the vehicle to a stop by a uniformed law enforcement officer with the
> SPOKANE POLICE DEPARTMENT, whose vehicle was equipped with
> lights and sirens.

Clerk's Papers, *State v. Bronowski*, No. 39108-6-III (1 CP) at 1. As pertinent here,

the charging document did not specify which type of "visual or audible signal"

Mr. Bronowski ignored. *Id*.

Mr. Bronowski's case proceeded to trial. The jury was instructed that, to convict

Mr. Bronowski, he must have ignored a signal given "by hand, voice, emergency light,

or siren." *Id*. at 27; *see* 1 RP (Mar. 23, 2022) at 285-86. A jury convicted him as charged.

7

*Sentencing*

Mr. Bronowski was sentenced in both cases on the same day in separate hearings before different judges. In each case, Mr. Bronowski signed a stipulation agreeing to the State's summary of his criminal history. Each stipulation included a statement, initialed by Mr. Bronowski, that "any out-of-state or foreign conviction(s) is the equivalent of a Washington State criminal felony offense" for purposes of calculating his offender score. 1 CP at 159; 2 CP at 159. An Oregon conviction and an Idaho conviction were included in the State's recitation of Mr. Bronowski's criminal history, which included 11 prior adult felonies. Mr. Bronowski's offender score thus undisputedly exceeded 9.

In addition to the written stipulation, trial counsel informed the first sentencing judge, "[W]e've decided not to dispute the out-of-state convictions. . . . [I]t doesn't change the sentencing range." 1 RP (May 10, 2022) at 315. In the attempt to elude case, the trial judge imposed a standard-range sentence. As to legal financial obligations, the court imposed the then-mandatory $500 crime victim penalty assessment (VPA) and waived all other fees, finding Mr. Bronowski was indigent.

Later that day, Mr. Bronowski was sentenced in the stolen motor vehicle case. The trial court imposed a standard-range sentence, but granted the State's request to run it consecutively to the sentence in the eluding case.

As support for its choice to impose a consecutive sentence, the court orally

referenced the so-called free crimes aggravator. *See* RCW 9.94A.535(2)(c). However, the

trial court did not orally state it had found substantial and compelling reasons to impose

an exceptional sentence, nor did it check a box finding such reasons in its written

judgment.

Like the earlier judge, the trial judge in the possession of a stolen vehicle case

found Mr. Bronowski was indigent and imposed only the $500 VPA.

Mr. Bronowski timely appealed from his judgment and sentence in each case. On

his motion, the appeals were consolidated for review.

ANALYSIS

Mr. Bronowski makes four challenges to his possession of a stolen motor vehicle

conviction, one challenge to his attempting to elude a pursuing police vehicle conviction,

and three challenges to his sentences. We address each of his claims in turn.

*Possession of a stolen motor vehicle case*

*1. Denial of continuance*

Mr. Bronowski contends the trial court violated his right to compulsory process

when it denied his counsel's oral request for a continuance the morning of trial. The State

responds by pointing to the six prior continuances in the same case and positing that the

witnesses sought by the defense could not have offered material testimony. We agree with the State.

Trial courts enjoy considerable discretion to grant or deny a motion for continuance. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). In exercising this discretion, a trial court should consider "the totality of the circumstances." *Balandzich v. Demeroto*, 10 Wn. App. 718, 721, 519 P.2d 994 (1974). Relevant considerations include the necessity of a prompt disposition; the movant's needs; possible prejudice to the nonmovant; and prior history of the litigation, including prior continuances. *Id*. at 720. We review a trial court's decision regarding whether to grant a continuance for abuse of discretion. *See id*.

Here, there was no abuse of discretion. Mr. Bronowski's trial had already been continued six times and, when the court granted the sixth continuance, the parties were warned that no further continuances would be granted. *See id*. at 721. Mr. Bronowski waited until the morning of trial to request another continuance. *See Odom v. Williams*, 74 Wn.2d 714, 717-18, 446 P.2d 335 (1968). The case was a simple one that had been pending for over 10 months. *See Martonik v. Durkan*, 23 Wn. App. 47, 51, 596 P.2d 1054 (1979). And the defense provided no reason to believe that yet another continuance would

10

make a difference in Mr. Bronowski's months-long attempt to locate the two Yost

Gallagher witnesses.

Mr. Bronowski also argues that the trial court's refusal to grant a seventh

continuance violated his right to compulsory process. *See Downing*, 151 Wn.2d at 274-

75. Specifically, he complains he was not provided an adequate opportunity to secure

testimony from the Yost Gallagher witnesses. We review this type of constitutional

claim de novo. *State v. Horn*, 3 Wn. App. 2d 302, 310, 415 P.3d 1225 (2018).

Mr. Bronowski's compulsory process claim fails because he has not shown that

the Yost Gallagher witnesses would have provided information material to his case.

Mr. Bronowski admitted he possessed the stolen truck, and the only contested issue at

trial was whether he knew the truck was stolen. There is no indication the Yost Gallagher

witnesses would have had anything to say on this topic. The two witnesses were strangers

to Mr. Bronowski and they lacked information regarding how Mr. Bronowski came to

acquire the truck. Any testimony that could have been provided by the Yost Gallagher

witnesses would not have bolstered Mr. Bronowski's chosen defense. Thus, the trial court

did not violate Mr. Bronowski's rights by refusing to give him more time to locate the

witnesses. *Cf. State v. Watson*, 69 Wn.2d 645, 651, 419 P.2d 789 (1966) (holding trial

11

court erred by failing to continue homicide trial where the witness sought by defense counsel could have corroborated the defendant's claim of self-defense).

## 2. Exclusion of evidence

Mr. Bronowski contends the superior court abused its discretion by prohibiting questions into whether Mr. Young told a Crime Check operator he was "going to beat [Mr. Bronowski's] ass." 1 RP (Apr. 19, 2022) at 68. Mr. Bronowski contends the evidence was highly relevant and that the evidence's exclusion violated his constitutional right to present a defense. We disagree.

Mr. Bronowski's constitutional claim turns on whether the proposed testimony was relevant. "There is no right, constitutional or otherwise, to have irrelevant evidence admitted." *State v. Darden*, 145 Wn.2d 612, 624, 41 P.3d 1189 (2002). "Evidence is relevant if it has a tendency to make the existence of any fact of consequence more probable or less probable than it would be without the evidence." *Id*. (citing ER 401).

We agree with the trial court that Mr. Bronowski's proposed line of questioning was irrelevant. The only disputed element in Mr. Bronowski's case was whether he knew the truck was stolen. *See* RCW 9A.56.140(1); *State v. Makekau*, 194 Wn. App. 407, 413, 378 P.3d 577 (2016). Evidence that Mr. Young told the Crime Check operator he

wanted to "beat [Mr. Bronowski's] ass," 1 RP (Apr. 19, 2022) at 68, had no bearing on

Mr. Bronowski's state of mind. Thus, the evidence was irrelevant.

On appeal, Mr. Bronowski argues the evidence was relevant because it would have

impeached Mr. Young's credibility. Specifically, Mr. Bronowski theorizes the disclosure

that Mr. Young had made a threatening statement would have tended to impeach his

testimony that he had not behaved violently toward Mr. Bronowski. According to Mr.

Bronowski, if the jury believed Mr. Young had lied about his demeanor, it might have

also disbelieved his testimony regarding whether any of his employees were allowed to

borrow the truck or whether "Ant" was an employee.

Mr. Bronowski's theory of relevance fails. Mr. Young never denied that he was

angry at Mr. Bronowski. He merely disagreed that he tackled Mr. Bronowski to the

ground. *See id*. at 71. More importantly, the evidence at trial was both overwhelming and

undisputed that Mr. Young's company truck had been taken without permission. The

damage to both the truck and the fence indicated that the truck had been forcibly driven

through the fence. *See, e.g.*, *id*. at 46. This evidence was inconsistent with permissive use.

In addition, employee Edward Paine corroborated Mr. Young's testimony that no one had

permission to drive the truck at the time of the theft. *See id*. at 43.

Mr. Bronowski's proposed impeachment of Mr. Young was irrelevant to the issues to be resolved at trial. The trial court therefore did not infringe Mr. Bronowski's right to present a defense.

### 3. Prosecutorial misconduct

Mr. Bronowski contends the trial prosecutor committed reversible misconduct by objecting twice to his testimony on the basis that Mr. Bronowski "mischaracteriz[ed] . . . the facts." *Id*. at 93, 98. The State concedes the objections were improper, but contends they were not prejudicial. We agree with the State.

Prosecutorial misconduct may deprive a defendant of the right to a fair trial. *See In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 165, 410 P.3d 1142 (2018) (citing U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22). An individual alleging prosecutorial misconduct must demonstrate the prosecutor's conduct was both (1) improper and (2) prejudicial. *State v. Scherf*, 192 Wn.2d 350, 393, 429 P.3d 776 (2018). The parties correctly agree the prosecutor's objections were improper. *See State v. Edvalds*, 157 Wn. App. 517, 525, 237 P.3d 368 (2010) (holding it is improper for a prosecutor to personally opine about the veracity of a witness). The only dispute goes to prejudice.

The applicable standard for prejudice turns on whether Mr. Bronowski preserved

his claim. If preserved, reversal based on prosecutorial misconduct requires the defendant

to show "'a substantial likelihood'" that the misconduct affected the jury's verdict.

*Scherf*, 192 Wn.2d at 393-94 (quoting *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653

(2012)). If unpreserved, a defendant must show "the prosecutor's misconduct was so

flagrant and ill intentioned that . . . 'no curative instruction would have obviated any

prejudicial effect.'" *Id.* at 394 (quoting *Emery*, 174 Wn.2d at 761); *see State v.*

*Loughbom*, 196 Wn.2d 64, 70, 470 P.3d 499 (2020).

Here, Mr. Bronowski's claim of misconduct was arguably unpreserved. After the

trial court overruled the State's objections, Mr. Bronowski never took any corrective

action, such as asking for a curative instruction. The fact that Mr. Bronowski failed to

seek a tailored curative instruction "strongly suggests" that the prosecutor's improper

objections "did not appear critically prejudicial to [Mr. Bronowski] in the context of

the trial." *State v. Swan*, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

At any rate, Mr. Bronowski fails to show that the prosecutor's misconduct was

substantially likely to impact the jury's verdict. The prosecutor's improper objections

were made while Mr. Bronowski was testifying about Mr. Young's alleged acts of

aggression. As previously explained, the issue of whether Mr. Young behaved

15

aggressively towards Mr. Bronowski had nothing to do with Mr. Bronowski's chosen defense. Furthermore, the court instructed the jury orally and in writing that lawyer's objections are not evidence and that the jury is the sole judge of witness credibility. *See* 1 RP (Apr. 18, 2022) at 97; 1 RP (Apr. 19, 2022) at 120-21; 2 CP at 13-14. We presume that the jury followed all of those instructions. *See State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). The record does not indicate the prosecutor's improper objections likely impacted the jury's verdict.

Mr. Bronowski argues that the prosecutor's improper objections directly burdened his constitutional right to testify and, as a result, the State is obliged to demonstrate the error was harmless beyond a reasonable doubt. *See State v. Teas*, 10 Wn. App. 2d 111, 122, 447 P.3d 606 (2019) ("[T]he constitutional harmless error standard applies when a prosecutor's improper comments directly violate a constitutional right."). Mr. Bronowski cites no authority for the claim that a prosecutor's inappropriate comments on a defendant's veracity *directly* violate a defendant's constitutional right to testify. Given the lack of citations, we assume no court has ever so held. *Herdson v. Fortin*, 26 Wn. App. 2d 628, 650 n.13, 530 P.3d 220 (2023). The prosecutor's objections, while improper, did not actually prevent Mr. Bronowski from testifying or compel him to stay silent. *See State v. Robinson*, 138 Wn.2d 753, 758-65, 982 P.2d 590 (1999); *see also Teas*, 10 Wn. App. 2d

at 123 (holding that defendant's right to testify was not directly violated even where the trial prosecutor improperly asked the jury to draw an adverse inference from the defendant's decision to testify). Mr. Bronowski's right to testify was not directly violated.

### 4. Cumulative error

Mr. Bronowski contends that cumulative error deprived him of a fair trial in the possession of a stolen vehicle case. "Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless." *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). But because Mr. Bronowski has identified only one error that occurred at trial—the prosecutor's improper objections—his invocation of the cumulative error doctrine necessarily fails. *Emery*, 174 Wn.2d at 766.

### Attempting to elude a pursuing police vehicle case

Mr. Bronowski argues his eluding conviction should be reversed because the charging document improperly omitted an essential element of the crime. Specifically, he notes the charging document failed to state that the signal to stop given by a police officer was "by hand, voice, emergency light, or siren," as specified in RCW 46.61.024(1).

Because Mr. Bronowski raises this claim for the first time on appeal, we liberally construe the charging document in favor of validity. *State v. Marcum*, 116 Wn. App. 526, 534, 66 P.3d 690 (2003). An information is sufficient under this standard if it contains

some language from which notice of each required element of the offense can be found.

*Id*. If all essential elements can be found by fair construction, "the conviction will not be

reversed unless the defendant can show 'that he or she was . . . actually prejudiced.'"

*State v. Derri*, 199 Wn.2d 658, 691, 511 P.3d 1267 (2022) (quoting *State v. Kjorsvik*,

117 Wn.2d 93, 106, 812 P.2d 86 (1991)).

Assuming, without deciding, that the provision of a signal being by "hand, voice,

emergency light, or siren," is a required element under RCW 46.61.024, it can fairly be

implied by the language in Mr. Bronowski's charging document. The charging document

alleged Mr. Bronowski ignored a "visual or audible signal" given by a uniformed officer

"whose vehicle was *equipped* with lights and sirens." 1 CP at 1 (emphasis added).

Liberally construed, this language "'convey[s] the same meaning and import'" as if

the missing element was explicitly included. *State v. Naillieux*, 158 Wn. App. 630, 643,

241 P.3d 1280 (2010) (quoting *Kjorsvik*, 117 Wn.2d at 108); *see also State v. Tandecki*,

153 Wn.2d 842, 848-49, 109 P.3d 398 (2005).

Mr. Bronowski does not argue he was actually prejudiced by the challenged

language in his charging document. We therefore reject his challenge to the charging

document and affirm his conviction.

*Sentencing*

Mr. Bronowski challenges three aspects of his sentences. First, he contends the court erred in imposing a consecutive sentence in the stolen motor vehicle case. Second, he contends both courts' calculations of his offender score were erroneous based on the inclusion of two out-of-state convictions. Third, he asks this court to remand with instructions to strike the VPA from his sentence on the basis of indigence. We address each claim in turn.

*1. Consecutive sentence in the possession of stolen motor vehicle case*

Mr. Bronowski challenges his exceptional sentence in the stolen motor vehicle case, arguing it was improperly imposed without sufficient findings. The State concedes error and agrees to a remand for resentencing.

"Convictions entered or sentenced on the same date" are considered "'other current offenses.'" Former RCW 9.94A.525(1) (2021). And the imposition of consecutive sentences for multiple "current offenses" is an exceptional sentence upward which may only be imposed pursuant to the exceptional sentence provisions of the Sentencing Reform Act of 1981, chapter 9.94A RCW. *See* RCW 9.94A.589(1)(a). A trial court "may impose" an exceptional sentence only "if it finds . . . substantial and compelling reasons" to do so. RCW 9.94A.535. Any time an exceptional sentence is imposed, the trial court

19

must "set forth the reasons for its decision in written findings of fact and conclusions of law." *Id.*

Here, although he was sentenced by two different judges, Mr. Bronowski was sentenced in both case numbers "on the same date," meaning they were both "'current offenses.'" Former RCW 9.94A.525(1). The court in the stolen motor vehicle case ordered the sentence to run consecutively to the sentence that was imposed earlier that day in the eluding case. The sentencing judge orally referenced the so-called free crimes aggravator, which may support an exceptional sentence and does not require a factual finding by a jury. *See* RCW 9.94A.535(2)(c); *State v. Alvarado*, 164 Wn.2d 556, 567, 192 P.3d 345 (2008). But the court did not state an intention to impose an exceptional sentence, much less that it had found "substantial and compelling reasons" to deviate from the standard range. RCW 9.94A.535. Nor did it "set forth the reasons for its decision" in writing. *Id*. Given these omissions, the sentence must be reversed. *See* RCW 9.94A.589(1)(a); RCW 9.94A.585(4).

The sentence in the stolen motor vehicle case is reversed and that matter is remanded for resentencing.

20

*2. Offender score*

Mr. Bronowski challenges his offender score in both pending cases, arguing the

State failed to prove out-of-state convictions included in the score were comparable to

Washington offenses as required by former RCW 9.94A.525(3) (2021). The State claims

it met its burden of proof because, during the superior court proceedings, Mr. Bronowski

signed a statement affirming that his foreign convictions were "equivalent" to

Washington crimes for the purposes of computing his offender score. 1 CP at 159; 2 CP

at 159.

We agree with the State. "[O]nce a defendant acknowledges the existence and

comparability of prior convictions, no further proof is necessary." *State v. Mendoza*,

165 Wn.2d 913, 927, 205 P.3d 113 (2009) (citing *State v. Ross*, 152 Wn.2d 220, 233,

95 P.3d 1225 (2004)).

Mr. Bronowski makes the alternative claim that he was deprived of his

constitutional right to effective assistance of counsel when his attorney recommended

he sign the sentencing acknowledgment. To succeed on an ineffective assistance claim,

Mr. Bronowski must show his trial counsel's performance was (1) objectively deficient

and (2) prejudicial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Failure to meet either prong is dispositive. *State v. Berg*, 147 Wn. App. 923, 937, 198 P.3d 529 (2008).

Mr. Bronowski has not shown deficient performance. As Mr. Bronowski acknowledges, his out-of-state convictions could possibly qualify as comparable to Washington offenses, depending on whether the State could produce a sufficient factual record. *State v. Bronowski*, No. 39108-6-III, Br. of Appellant at 25. If Mr. Bronowski's attorney performed diligently (which we presume to be the case),[4] the attorney likely would have been aware of the full factual record and known whether the State would have been able to meet its burden of proof. Had counsel determined the State could have easily met its burden, it would have been entirely reasonable for counsel to recommend that Mr. Bronowski concede comparability. Given this possibility, counsel's performance can fairly be characterized as legitimate strategy. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

Mr. Bronowski also has not shown prejudice. As Mr. Bronowski concedes, his offender score would still exceed 9 even if counsel had successfully challenged the out-of-state convictions. *State v. Bronowski*, No. 39108-6-III, Br. of Appellant at 27.

---

[4] When presented with an ineffective assistance of counsel claim, "[t]here is a strong presumption that counsel's performance was reasonable." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Thus, his standard sentencing range would not have changed. In such circumstances,

a defendant cannot show prejudice flowing from a miscalculated offender score "unless

the trial court conveyed a desire to impose a sentence at the low end of the standard

range." *State v. Royal*, 26 Wn. App. 2d 812, 819, 530 P.3d 573 (2023). Here, the record

does not contain any suggestion that the trial court wanted to impose a low-end sentence.

The sentence imposed by the court was near the high end of the standard range.

Mr. Bronowski is not entitled to relief. *Id*.

Mr. Bronowski has not shown that the State failed to meet its burden of proving

the comparability of his prior offenses. We therefore deny his request for resentencing in

the eluding case. With respect to the stolen motor vehicle case, we have already ordered a

full resentencing. Our current disposition does not preclude Mr. Bronowski from

withdrawing his stipulation and making objections to the offender score during

resentencing.

### 3. Crime victim penalty assessment

Mr. Bronowski's final challenge pertains to imposition of the $500 VPA. At the

time of Mr. Bronowski's sentencing hearing, imposition of the VPA was required. But

effective July 1, 2023, a VPA may no longer be collected from an indigent defendant. *See*

RCW 7.68.035(4), (5)(b). The State concedes that Mr. Bronowski is indigent and that the

VPA must be struck in both the stolen motor vehicle case and the eluding case. We accept

this concession. Because we are remanding for resentencing in the stolen motor vehicle

case, we need not take any further corrective action in that case: the new statute will apply

at resentencing. However, we direct the VPA in the eluding case be struck.

## CONCLUSION

We affirm Mr. Bronowski's convictions. We reverse the sentence imposed

in Mr. Bronowski's possession of a stolen motor vehicle case and remand for full

resentencing. In the eluding case, we remand with instructions to strike the VPA

but otherwise affirm Mr. Bronowski's sentence.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____    _____
Staab, A.C.J.                          Fearing, J.