[No. 256-40918-2. Division Two. January 4, 1971.]

CHARLES L. ROBINSON, *Appellant,* v. B. J. RHAY, *as Superintendent of the State Penitentiary, Respondent.*

2

*Fred O. Frohmader,* for appellant (appointed counsel for appeal).

*Slade Gorton, Attorney General,* and *Lee D. Rickabaugh, Assistant,* for respondent.

ARMSTRONG, C. J.—This is an appeal from a denial of a writ of habeas corpus. The petitioner, Charles Lee Robinson, was committed to Western State Hospital as a psychopathic delinquent, pursuant to RCW 71.06 on August 8, 1956. At that time, he was 17 years of age and already had a history of several car thefts and detention at Green Hill School. After several escapes from the Western State Hospital, he was transferred to Eastern State Hospital on April 8, 1957 for security reasons.

During the summer of 1958, the petitioner was allowed to visit his parents in Tacoma for 60 days. While in Tacoma, he and two other young persons were charged with the crime of robbery. At that time petitioner was 19 years of age. At the arraignment, while represented by his court-appointed counsel, the petitioner pleaded guilty to the robbery charge. The court sentenced the petitioner to a penal institution.

In February, 1967 the petitioner, while incarcerated in the state prison at Walla Walla, filed a petition for writ of habeas corpus with the Superior Court for Walla Walla County. The petitioner alleged that at the time of his arraignment for the robbery in Pierce County, he was legally incompetent to enter a plea of guilty, due to his prior commitment as a psychopathic delinquent. Since this fact was known to the court, the petitioner contends the trial court should have held a competency hearing on its own motion. The failure to do so was contended to be a denial of due process.

During the proceedings before the Superior Court for Walla Walla County, it was discovered that the court reporter's notes of the arraignment had been lost. As a result,

venue was changed to Pierce County for the convenience of witnesses who were to testify at the habeas corpus hearing.

After 3 days of hearings, the Superior Court for Pierce County denied the petition for the writ of habeas corpus. The findings of fact and conclusions of law which are challenged by the petitioner are set forth in the margin.[1]

Plaintiff makes a 3-pronged attack on the judgment denying his writ of habeas corpus. He contends: (1) that

---

[1]Findings of Fact:

"VIII

"That at the time the petitioner appeared with his counsel before the Pierce County Superior Court for arraignment, the trial judge knew that the petitioner had been previously committed as a psychopathic delinquent, but nothing occurred at that time to call the court's attention to a competency question or to the need for examination to determine if the petitioner was competent to stand trial or to plead GUILTY. No contention was made by the petitioner or by his attorney, that the petitioner was incompetent to stand trial, nor was any request made by the petitioner, or by his attorney for a psychiatric examination and evaluation, nor was a motion made for a continuance for such purpose. The trial court at that time had the opportunity to observe the petitioner, and to observe petitioner's appearance and conduct as well as to consider petitioner's background and past behavior, as well as his personal and family history.

"IX

"That in addition to the testimony presented in this matter before the court, this court has considered all of the clinical and medical files, records and reports filed in this proceeding and has considered the written report of the examining psychiatrist, Gordon M. Parrott, M.D., who examined the petitioner at the request of this court and who submitted a report dated October 4, 1968, which is on file in this proceeding. That said testimony and hearings before this court and said clinical and medical files, records and reports indicate and show that at all pertinent and relevant times, including the present, the petitioner was not mentally ill, nor was he psychotic, nor was he incompetent, but rather he was a person with a behavioral problem who for that reason had been under close surveillance at Eastern State Hospital, as a psychopathic delinquent, prior to his release on his said trial visit to his parents."

Conclusions of Law:

"I

"That the petitioner's said judgment and sentence herein, being Pierce County Cause No. 33110, is valid and proper, and that the petitioner herein is properly in the custody of the respondent pursuant

because of his commitment as a psychopathic delinquent the court, at the arraignment, was required, of its own motion, to accord him a competency hearing; (2) that because of his commitment as a psychopathic delinquent he was mentally incompetent and the court was required to appoint a guardian ad litem to represent him; and (3) that it was impossible to retroactively determine his mental competency at the time of arraignment because of the loss of the court reporter's notes and the lapse of 10 years.

■ An analysis of these contentions requires that we first consider the statutes defining "psychopathic delinquent" and "mentally ill person."

RCW 71.06.010 provides in part:

"Psychopathic personality" means the existence in any person of such hereditary, congenital or acquired condition affecting the emotional or volitional rather than the intellectual field and manifested by anomalies of such character as to render satisfactory social adjustment of such person difficult or impossible.

"...

"Psychopathic delinquent" means any minor who is psychopathic, and who is a habitual delinquent, if his delinquency is such as to constitute him a menace to the health, person, or property of himself or others, and the minor is not a proper subject for commitment to a state correctional school, a penal institution, to a state school

---

to the said judgment and sentence and warrant of commitment, and that the maximum term of imprisonment thereon has not expired.

"II

"That, at the time of petitioner's arraignment before the Pierce County trial court on or about August 26, 1958, there was no evidence which raised a bona fide doubt as to petitioner's competency to stand trial or to enter a plea of GUILTY which would thereby entitle him to a sua sponte judicial competency hearing prior to his said plea of GUILTY.

"III

"That from the evidence submitted to this court, as well as clinical and medical reports, files and records, this court concludes that the petitioner herein was competent to stand trial and to make and enter his plea of GUILTY, and that the trial court did not abuse its discretion in accepting and entering petitioner's plea of GUILTY, which was freely and voluntarily made by the petitioner after advice by and while represented by competent counsel."

for the mentally deficient as a mentally deficient person, or to a state hospital as a mentally ill person.

RCW 71.02.010 states in part:

"Mentally ill person" shall mean any person found to be suffering from *psychosis or other disease impairing his mental health,* and the symptoms of such disease are of a suicidal, homicidal, or incendiary nature, or of such nature which would render such person dangerous to his own life or to the lives or property of others.

(Italics ours.)

Counsel for petitioner has made the helpful suggestion that the court "look at any medical definitions of psychopathy." The following definitions are contained in *Abnormal Psychology and Modern Life* (3d ed. 1964) by James C. Coleman, Professor of Psychology and Director of the Psychology Clinic School, The University of California at Los Angeles:

Psychopathic personality. Older term used to refer to a variety of immature and pathological personality types now included under the general heading of *Character and Behavior Disorders* in the Army classification. See also Antisocial personality.

Page 668.

Antisocial (psychopathic) personality. A type of personality disorder characterized by such traits as impulsivity, inability to profit from experience, and unethical behavior.

Page 656.

Psychosis. Severe personality disorder involving loss of contact with reality and usually characterized by delusions and hallucinations. Hospitalization is ordinarily required.

Page 668.

It will be observed from the statutory definitions and the text authority that a psychopathic delinquent is one who has behavioral or personality problems which result in antisocial or criminal activity. A psychopath is not necessarily a psychotic person who has a loss of contact with reality. While it is conceivable that one who is committed as a

psychopathic delinquent may have intervals of psychotic reactions, the mere fact of commitment as a psychopathic delinquent does not imply that one is psychotic, mentally ill, or incompetent to stand trial.

Petitioner first contends that because of his commitment as a psychopathic delinquent the court, at the time of arraignment, was required to accord him a hearing to determine whether he was competent to assist in his defense, even though neither petitioner nor his attorney requested such a hearing. In this respect the petitioner relies heavily on *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966) and *State v. Tate*, 74 Wn.2d 261, 444 P.2d 150 (1968).

In *Pate* the United States Supreme Court held that the judge must conduct a sanity hearing where the evidence raises a bona fide doubt as to the defendant's competency to stand trial. In that case, however, there was substantial evidence to indicate that Pate was psychotic. When he was a child, a brick fell on his head from a third floor height. He thought he heard voices telling him to do things. Before the murder in question, he had served a term in prison for murdering his infant son. Numerous witnesses testified to deranged and irrational acts. Four witnesses expressed the opinion that he was insane. The record clearly demonstrated that his sanity at the time of trial was very much in issue. There was a serious question raised as to his competency to stand trial and assist in his defense. In addition, the defendant's counsel had insisted throughout the proceedings that Pate's present insanity was in question. The case at bar is clearly distinguishable from *Pate*, because there was no evidence presented in our case that petitioner was insane and no indication that he was psychotic in any respect.

■ Furthermore, *Pate v. Robinson*, *supra*, does not remove from the trial judge's discretion the determination of whether a competency hearing is indicated, either because it is requested or because it is compelled by the facts of the particular case. *See Green v. United States*, 389 F.2d 949

(D.C. Cir. 1967). The discretion of the trial court was rec-
ognized by our Supreme Court in *State v. Dodd,* 70 Wn.2d
513, 519, 520, 424 P.2d 302 (1967), where the court stated:

> Whether the defendant possesses requisite mental compe-
> tency to make a plea of guilty rests largely within the
> trial court's discretion, an acceptance and entry of the
> plea by the court will not be overturned except in clear
> cases of abuse of such discretion.

We will also discuss the two *State v. Tate* cases. The first
was the initial appeal to the Supreme Court from Tate's
conviction for carnal knowledge of a 7½-year-old girl. The
second case was Tate's appeal to the Court of Appeals from
the remand hearing which determined his competency at
the time of his conviction.

Prior to the commencement of Tate's trial for carnal
knowledge, his counsel moved for a continuance so that the
trial court could determine if the defendant was mentally
competent to stand trial. In support of the motion, counsel
offered a 1962 Grays Harbor County Juvenile Court order
declaring defendant a "psychopathic delinquent" and com-
mitting him to Western State Hospital, and a 1966 Cowlitz
County Superior Court order recommitting defendant to
the same institution. The trial court refused to grant the
motion for a competency hearing unless the defendant en-
tered a plea of not guilty by reason of insanity. The defend-
ant declined to enter such a plea.

*Tate* is similar to our case only because there had been a
commitment as a "psychopathic delinquent" when he was a
juvenile. It differs from the case at bar because (1) defend-
ant's counsel made a motion for a competency hearing, and
(2) the charge of carnal knowledge of a 7½-year-old child,
in itself, demonstrates a possible question of a mental prob-
lem. When the crime charged is coupled with the psycho-
pathic delinquent commitment and the recommitment after
Tate had become an adult, the question of competence
looms larger. Furthermore, the trial judge made an error in
law in denying a competency hearing unless defendant en-
tered a plea of not guilty by reason of insanity. As the

Supreme Court pointed out, the test for a finding of not guilty by reason of insanity and the test for a finding of incompetency are not the same. In *Tate* the trial court was alerted to the question of Tate's competence to stand trial by far more than the juvenile court commitment as a psychopathic delinquent.

■ We hold that in determining whether an accused is competent to stand trial, the test is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and to assist in his defense with a rational as well as factual understanding of the proceedings against him. *State v. Tate*, 1 Wn. App. 1, 458 P.2d 904 (1969). The fact that the accused was at one time committed as a psychopathic delinquent does not, standing alone, compel a trial court judge to grant a hearing of its own motion to determine whether the accused is competent to stand trial. It is one of the factors the trial court judge could consider in determining whether the accused possesses the requisite mental competency to make an intelligent and voluntary plea of guilty.

■ Petitioner next contends that because of his commitment as a psychopathic delinquent he was mentally incompetent and the court was required to appoint a guardian ad litem to represent him.

In support of this contention, petitioner cites *In re Dill*, 60 Wn.2d 148, 372 P.2d 541 (1962). This case is clearly not in point, since it involved a mental illness commitment under RCW 71.02 and deals with the question of the need for a guardian or guardian ad litem where a mentally ill person is a party to an action.

Petitioner's last contention is that it was impossible to retroactively determine his mental competency because of the loss of the court reporter's notes and the lapse of 10 years.

The procedure of retrospective determination of competence to stand trial was applied by our Supreme Court in the first *Tate* case. In the second *Tate* case the Court of Appeals affirmed the findings of the superior court in the

remand proceedings and held that the remand court had properly determined Tate's competency to stand trial retrospectively. *See also Lee v. Alabama,* 406 F.2d 466 (5th Cir. 1968).

In many cases it would be impossible to make a retrospective determination of a defendant's competency after a lapse of many years. *See Pate v. Robinson, supra.* In this case the remand court considered all the clinical and medical files, records and reports that had been compiled by treatment and custodial institutions. A psychiatrist examined the petitioner and all of the records and files. The evidence presented in the hearings before the remand court demonstrated that at all relevant times, including the time of the retrospective determination, the petitioner was neither mentally ill, psychotic, nor incompetent. There was substantial evidence that petitioner was a person of average intelligence who had a behavioral problem. There was a record of sufficient completeness for a review of the issues raised by the petitioner. *See State v. Larson,* 62 Wn.2d 64, 381 P.2d 120 (1963).

The remand court was justified in its conclusions that there was no evidence which raised a bona fide doubt as to petitioner's competency to stand trial at the time of the arraignment and plea of guilty. The trial court did not abuse its discretion in accepting the petitioner's plea of guilty, which was freely and voluntarily made while being represented by competent counsel.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.

Petition for rehearing denied January 21, 1971.

Review denied by Supreme Court March 1, 1971.