**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Marriage of<br><br>SARAH MAY ALLBAUGH,<br><br>                 Respondent,<br><br>and<br><br>BENJAMIN NIGEL ALLBAUGH,<br><br>              Appellant. | No. 86871-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Benjamin Allbaugh challenges final orders entered in the dissolution of his marriage to Sarah Gooding.[1]  We affirm.

I

Allbaugh and Gooding married in 2007.  They share two children, who were 15 and 12 years old when Gooding petitioned for dissolution in June 2021.  After mediation failed, the parties went to trial in January 2024.  By then, their oldest child had reached majority, and the parties had reached an agreement on the residential schedule for their younger child, except for an exchange location.  The other issues for trial were child support, spousal support, and the division of the parties' assets and debts.

Gooding asked the court to award her support arrearages plus interest, monthly spousal support of $1,795 until Gooding remarried, and monthly child support of $962.  She also asked the court to direct Allbaugh to quitclaim his interest in the parties' home to her and either (1) award Allbaugh 13% of the equity in the home, or (2) in lieu of an

---

[1] Sarah Gooding was formerly known as Sarah Allbaugh.

equity award, waive Allbaugh's support arrearages. Meanwhile, Allbaugh asked the court to waive his support arrearages, split various personal property and debts, order Gooding to pay him for damage she did to his vehicle, split the equity in the home, and order $804 per month in child support and no spousal support.

After taking evidence, on February 16, 2024, the trial court issued a letter ruling with its findings and decisions. It determined that Allbaugh's gross monthly income was $8,509.48, and Gooding's was $4,707.27, resulting in a child support transfer payment from Allbaugh to Gooding of $839.47 per month. The court also concluded that Allbaugh should pay Gooding $800 per month in spousal support beginning March 1, 2024, "for a period of eighteen (18) months or until the death of either party or [Gooding]'s remarriage." As for support, the trial court found that Allbaugh owed Gooding arrearages of $25,552, plus accrued interest of $1,290, and attorney fees awarded in prior contempt orders. The trial court also determined that Gooding should be ordered to pay Allbaugh $991.60 for the cost to repair the damage that she undisputedly did to his vehicle.

Rather than ordering the parties to pay one another directly, the court calculated what it called the "Offset Amount," as follows:

| | |
|---|---:|
| support arrears | $25,552.00 |
| interest | 1,290.00 |
| attorney's fees previously awarded | 6,878.81 |
| attorney's fees for contempt | 790.00 |
| vehicle damage credit | (991.60) |
| **Offset Amount** | **$33,519.21** |

The court then determined that the offset amount should be offset against Allbaugh's interest in the parties' home.

The trial court disagreed with Gooding's contention that Allbaugh was entitled to

only 13 percent of the equity in the home. Instead, it determined that the home was a community asset, and that 60 percent of the equity should be awarded to Gooding, and 40 percent to Allbaugh. The court awarded the home to Gooding subject to the outstanding mortgage and to the following conditions: (1) that Gooding refinance the existing mortgage and, from the loan proceeds, pay Allbaugh his share of the equity less the offset amount; (2) if Gooding was unable to refinance and pay Allbaugh within 18 months after the entry of final orders, that the home be sold and Gooding receive 60 percent of the net proceeds plus the Offset Amount; and (3) that judgment be entered in Allbaugh's favor in the amount of the equity in the home less the Offset Amount, provided that Allbaugh be enjoined from enforcing the judgment except as provided in the final orders. Finally, the trial court allocated certain personal property and debts and liabilities and resolved the parties' dispute about the exchange location for their youngest child. The court declined to award attorney fees to either party.

On May 9, 2024, the trial court entered final orders consistent with its earlier letter decision. Allbaugh appeals.

II

As a pro se litigant, Allbaugh is held to the same standard as an attorney and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). This includes RAP 10.3(a)(6), which requires the appellant to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." As the party seeking review, Allbaugh also "has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue[s]." In re Marriage of Haugh, 58

Wn. App. 1, 6, 790 P.2d 1266 (1990); see also RAP 9.2(b) (requiring the party seeking review to include in the record all the evidence relevant to a trial court's disputed findings).

Allbaugh largely fails to cite to relevant legal authorities or provide meaningful analysis in support of his various arguments on appeal. And even though the trial court relied extensively on exhibits to support its findings about the parties' respective financial circumstances—which are a focus of Allbaugh's arguments on appeal—no exhibits have been transmitted to this court.[2] These deficiencies hinder our review. But we address Allbaugh's arguments to the extent the record and briefing before us allow.[3]

III

Allbaugh argues that the trial court's decisions on maintenance, child support, and property division must be reversed. We disagree.

Appellate review of a trial court's decisions in a dissolution proceeding is highly deferential. In re Marriage of Leaver, 20 Wn. App. 2d 228, 238, 499 P.3d 222 (2021); see also In re Marriage of Landry, 103 Wn.2d 807, 809, 699 P.2d 214 (1985) ("[T]rial court decisions in a dissolution action will seldom be changed on appeal."). As the party challenging the trial court's decisions, Allbaugh "bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." Landry, 103 Wn.2d at 809. To meet that burden, Allbaugh must show that no reasonable judge would have made

---

[2] Allbaugh has filed additional evidence in this court without submitting a motion to supplement the record or otherwise seeking permission from this court as required by RAP 9.11(a) and RAP 10.3(a)(8). We do not consider Allbaugh's additional evidence. We also do not consider the appendices attached to Gooding's respondent's brief. See RAP 10.3(a)(8) (appendix may not include materials not contained in the record on review without this court's permission).

[3] To the extent we do not reach any challenges that Allbaugh raises on appeal, it is because they are not adequately briefed to warrant consideration. Cf. Norcon Builders, LLC. v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) (the appellate court "will not consider an inadequately briefed argument").

the same decisions. See Landry, 103 Wn.2d at 809-10 ("The trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion.").

Allbaugh does not meet his burden. He argues that the trial court erred by including "non-existent overtime pay" when calculating his income. Although Allbaugh presented evidence that overtime was not guaranteed, there was also evidence that overtime opportunities had historically been available to Allbaugh and that he had taken advantage of them. Allbaugh essentially invites us to reweigh the evidence, but this court does not weigh evidence on review. See In re Marriage of McNaught, 189 Wn. App. 545, 359 P.3d 811 (2015) ("We do not review credibility determinations or reweigh the evidence to determine if we should reach a different conclusion."); see also In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011) (trial court's findings after a bench trial will be upheld so long as they are supported by substantial evidence— "evidence sufficient to persuade a rational fair-minded person the premise is true"). Allbaugh also argues that the trial court erred by including his employer's 401(k) contributions. But RCW 26.19.071(3) provides that income for child support purposes "shall include income from any source" (emphasis added), and the statutes governing maintenance and property disposition generally provide that the court must consider the parties' economic circumstances. See RCW 26.09.090(1)(f); RCW 26.09.080. Allbaugh cites no authority for the proposition that, under these statutes, it was manifestly unreasonable for the trial court to consider his employer's 401(k) contributions in calculating his income.

Allbaugh next asserts that the trial court erred by not considering that Gooding's financial declarations included expenses for "two additional unemployed adults living in

her household."[4] But as Gooding points out, these two adults are the parties' older child, who was 18 at the time of trial, and Gooding's 20-year-old son from a prior relationship, to whom Allbaugh had been a father figure for most of his life. Allbaugh cites no authority for the proposition that the trial court was not permitted to consider Gooding's expenses for these young adults, particularly when they were part of the household while the parties were still married. Cf. RCW 26.09.090(1)(c) (among the factors the court must consider in determining maintenance is "[t]he standard of living established during the marriage" (emphasis added)).

Allbaugh also contends that the trial court erred in determining the amount of support arrearages. But at trial, Allbaugh offered—and the trial court admitted—an exhibit reflecting that as of the end of December 2023, Allbaugh owed Gooding $25,552 in past-due support. There was also evidence that the trial court had entered judgment in Gooding's favor for $1,290 in accrued interest. Substantial evidence supports the trial court's finding that Allbaugh owed Gooding past-due support and accrued interest in these amounts.

Allbaugh next takes issue with the trial court's allocation of the equity in the parties' home.[5] He asserts that "[t]he court inadequately addressed the distributive dynamics, leaving [Allbaugh's] equitable rights in [the] property at only 13% and not adequately recognized." Allbaugh misunderstands the trial court's decision. The trial

---

[4] Allbaugh also asserts that Gooding traveled to Las Vegas and bought a new car after trial, and he argues that these activities contradicted Gooding's trial testimony about her financial circumstances. But Gooding's alleged posttrial activities were not before the trial court and, thus, we do not consider them.

[5] Allbaugh also asserts that the trial court failed to resolve a dispute about allocation of his birth certificate. But he did not raise this issue at trial, so he failed to preserve it for appeal. See Brundridge v. Fluor Fed. Servs., Inc., 164 Wn.2d 432, 441, 191 P.3d 879 (2008) ("A party who fails to raise an issue at trial normally waives the right to raise that issue on appeal." (citing RAP 2.5(a)).

court awarded Allbaugh 40—not 13—percent of the equity in the parties' home. In doing so, the court carefully considered, in a detailed 12-page letter decision, the factors set forth in RCW 26.09.080, i.e., (1) "[t]he nature and extent of the community property," (2) "[t]he nature and extent of the separate property," (3) "[t]he duration of the marriage," and (4) "[t]he economic circumstances of each spouse . . . at the time the division of property is to become effective." Allbaugh fails to show that the trial court abused its considerable discretion by awarding 60 percent of the home equity to Gooding and 40 percent to Allbaugh. Cf. In re Marriage of Tower, 55 Wn. App. 697, 700, 780 P.2d 863 (1989) (the trial court has "considerable discretion in making a property division").

Next, Allbaugh argues that the trial court erred by not accounting for two COVID-19 stimulus payments that he claimed Gooding wrongfully retained in full.[6] Allbaugh is correct that the trial court did not specifically address the stimulus payments. But we have expressly disavowed the notion that a trial court's division of assets requires "mathematical precision." In re Marriage of Kaplan, 4 Wn. App. 2d 466, 476, 421 P.3d 1046 (2018). Instead, the court's obligation is to consider the statutory factors set out in RCW 26.09.080 and reach a just and equitable distribution, overall, based on all the facts and circumstances.

Here, the trial court thoroughly considered the factors set out in RCW 26.09.080. It determined that "the separate property each [party] ha[d] accumulated . . . [wa]s neither high value nor substantial" and that the parties' home constituted the "substantial portion of the marital community's net worth." The court then allocated the

---

[6] Gooding, for her part, testified that Allbaugh had agreed she could use one of the stimulus payments to pay off Allbaugh's phone, and that she also used the stimulus money to purchase stocks and a new washer and dryer for the parties' home.

equity in the home based on "the disparity in [the parties'] respective incomes and economic situations," it awarded each of the parties a vehicle, and it distributed various other personal effects and consumer debt obligations—none of which Allbaugh challenges. Allbaugh does not persuade us that reversal is required merely because the trial court did not specifically address the COVID-19 stimulus payments.

Allbaugh next contends that the trial court "ignored a possible conflict of interest because [Gooding worked] for Island County," where the parties' trial took place, and that it erred by failing to enforce Island County Local Rule (ICLR) 43(m), which provides that "[c]ounsel and self-represented parties shall provide all exhibits . . . to the Superior Court Clerk at least two (2) judicial days in advance of the trial." But Gooding worked for the Island County public works department, and this fact alone does not overcome the presumption that a trial court acts impartially. Cf. In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("There is a presumption that a trial judge properly discharged his/her official duties without bias or prejudice[, and t]he party seeking to overcome that presumption must provide specific facts establishing bias."). And the record reflects that both parties violated ICLR 43(m), that the trial court gave the parties an opportunity to confer about the exhibits, and that they agreed about the admissibility of nearly all of them. Allbaugh fails to articulate how the trial court's decision not to enforce ICLR 43(m) rule prejudiced him, and thus, he does not show that reversal is required. Cf. Thomas v. French, 99 Wn.2d 95, 104, 659 P.2d 1097 (1983) (error without prejudice is not grounds for reversal).

Finally, Allbaugh contends that his counsel was unprepared and this resulted in "poor representation." To the extent that Allbaugh raises a claim of ineffective

assistance of counsel, that claim fails because "the Sixth Amendment right to effective assistance of counsel only applies to criminal proceedings, and no similar right is given to parties in civil actions" such as this dissolution proceeding. Willapa Trading Co., Inc. v. Muscanto, Inc., 45 Wn. App. 779, 785, 727 P.2d 687 (1986).

We affirm.[7, 8]

_Mann, J._

WE CONCUR:

_Feldman, J._                    _Chung, J._

---

[7] Allbaugh has filed a cost bill requesting an award of costs. Because Allbaugh does not prevail on review, his request for costs is hereby denied. See RAP 14.2 ("A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."). Gooding has also requested an award of costs. That request should be directed to a commissioner or court clerk as provided in Title 14 RAP.

[8] Gooding requests an anti-harassment order and order restricting abusive litigation. These requests are denied without prejudice to Gooding requesting those orders from the superior court.